UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))
No. 96-50065
)))))))))))))))))))))))


HOUSE THE HOMELESS, INC., A NON-PROFIT ORGANIZATION,
RICHARD R. TROXELL, President, CHRIS LYNE,

Plaintiffs-Appellants,


versus


SHEILA E. WIDNALL, Sec. Air Force, in her official
capacity of Secretary of the United States, et al.,

Defendants.


JESUS GARZA, In His Official Capacity as City Manager
of the City of Austin,

Defendant-Appellee.


)))))))))))))))))))))))
No. 96-50265
)))))))))))))))))))))))

HOUSE THE HOMELESS, INC., A NON-PROFIT ORGANIZATION,
RICHARD R. TROXELL, President, CHRIS LYNE,

Plaintiffs-Appellants,


versus


SHEILA E. WIDNALL, Sec. Air Force, in her official capacity
as Secretary of the United States Air Force, WILLIAM J. PERRY,
Honorable, In His Official Capacity as Secretary of the Department
of Defense, JESUS GARZA, In His Official Capacity as City Manager
of the City of Austin,

Defendants-Appellees.

)))))))))))))))))))))))))))))))))))))))))))))))))))))))
Appeals from the United States District Court
for the Western District of Texas
)))))))))))))))))))))))))))))))))))))))))))))))))))))))
August 21, 1996

Before BENAVIDES, STEWART and DENNIS, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Plaintiffs-Appellants appeal the district court's order and partial judgment denying Plaintiffs-Appellants' request for a temporary restraining order and preliminary injunction and dismissing Plaintiffs-Appellants' claims against Defendant-Appellee City of Austin, and the district court's order and final judgment dismissing Plaintiffs-Appellants' claims against all remaining Defendants-Appellees.  We affirm.

BACKGROUND

In 1942, the Air Force[1] and the City of Austin ("City") negotiated an agreement whereby the Air Force used $466,000 supplied by the City to purchase 2,892 acres for a military air base, which became Bergstrom Air Force Base ("Bergstrom").  The terms of the agreement, set forth in a "night letter," included the following:

> TITLE TO VEST IN THE UNITED STATES AND TO BE CONVEYED TO CITY OF AUSTIN WHEN NO LONGER NEEDED BY GOVERNMENT AFTER PRESENT WAR SUBJECT TO RIGHT OF RECAPTURE OF USE IN ANY FURTHER FUTURE EMERGENCY
>
> ANY STRUCTURES ERECTED BY GOVERNMENT WILL REMAIN PROPERTY OF UNITED STATES
>
> RUNWAYS[,] ROADS[,] ETC WHICH ARE NOT SALVAGEABLE WILL REMAIN IN PLACE
>
> LANDS WILL BE TURNED OVER TO CITY IN PRESENT CONDITION EXCEPT AS TO EXISTING BUILDINGS WHICH ARE TO BE DEMOLISHED
>
> GOVERNMENT TO HAVE OPTION OF LEAVING OF LANDS PART OR ALL STRUCTURES TO BE ERECTED IN LIEU OF RESTORATION.

---

[1]  The Air Force did not become a separate branch of the Armed Services until 1947; until that time it was part of the United States Army.

Then on February 27, 1947, the Austin City Council passed a resolution declaring that the City wanted the Air Force to continue using Bergstrom as an air base, stating that "only upon abandonment of Bergstrom Field as a permanent Army [Air Force] Air Base should the City of Austin request or demand that full legal and equitable title to said lands, together with all improvements...revert to and vest in the City of Austin."[2]

In April 1991, Bergstrom was recommended for closure on September 30, 1993. Prior to the closure, the Air Force submitted virtually all of the after acquired property, *i.e.* 324 acres of land that was purchased with federal funds after the 1942 land purchase and all improvements on the total land acreage, to the Department of Housing and Urban Development ("HUD") for evaluation under the McKinney Act.[3] HUD determined that this property was unsuitable for use by the homeless, publishing its findings. *See* 58 Fed. Reg. 9208, 9215 (1993); 58 Fed. Reg. 15158 91993); 58 Fed. Reg. 45353 (1993).

Bergstrom was closed on September 30, 1993, whereupon the City immediately took physical possession and control of the land. The Air Force was unable to execute a quitclaim deed immediately,

---

[2] In 1954, the Army Corps of Engineers, on behalf of the Air Force, informed the City of the government's position that "whatever legal interest the City may have in Bergstrom AFB is limited to the land acquired with funds furnished for that purpose by the City," and not in improvements constructed on the land by the federal government.

[3] Since that time, the Air Force has discovered that 3.5 acres were overlooked, and is now providing HUD with the information on this parcel for a suitability determination under the McKinney Act.

however, due to the environmental cleanup requirements under § 120(h) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). Therefore, the Air Force entered into a lease with the City under which the Air Force reiterated its intent to execute a quitclaim deed upon completion of the CERCLA obligations, reserving its right to access the land in order to complete the environmental cleanup.

Plaintiffs-Appellants approached both the Air Force and the City about its concern over the disposition of the land, the proposed City airport, and funding for a detoxification program for the homeless on the improved land. The Air Force informed Plaintiffs-Appellants that because it no longer owned the land, it could not interfere with the City's ownership and use. In January 1995, the City issued a Request for Proposal to use some of the improvements on the land as interim transitional housing for homeless individuals or families.[4] The City received only one response, which was deemed non-responsive. Although Plaintiffs-Appellants wrote to express their support in a proposal submitted by another organization, they did not propose their own plan to use the land improvements.

On December 11, 1995, Plaintiffs-Appellants[5] filed suit under Title V of the Stewart B. McKinney Homeless Assistance Act

---

[4] The City's Task Force also considered relocating the improvements off the base. Plaintiffs-Appellants criticized the plan because no funding was available to move the housing.

[5] Plaintiffs-Appellants include a homeless advocacy organization, its president, and an individual homeless person.

4

("McKinney Act"), 42 U.S.C. § 11411, seeking injunctive relief to prevent the removal and/or destruction of housing stock on 2,892 acres of land, which was the former Bergstrom.[6] Plaintiffs-Appellants originally filed suit against the United States Air Force and the Department of Defense ("Federal Defendants"), later joining the City as a party defendant.

An evidentiary hearing was held on Plaintiffs-Appellants' Application for Temporary Restraining Order and Preliminary Injunction on December 19, 1995, after which the district court denied both. The court concluded that Plaintiffs-Appellants had failed to show a likelihood of success on the merits of their claim, and that the harm that would befall the City if the preliminary injunction were granted would far outweigh any harm to Plaintiffs-Appellants in denying it. The court found that the City maintained an equitable reversionary interest in the land and its improvements, subject only to a limited lease with the Air Force required under CERCLA to remediate environmental hazards on the land, which the court found did not disrupt the City's reversionary interest. The court also noted that the City could face delay damages of over $73,000,000 if a one-year injunction were granted.

On January 9, 1996, the district court granted the City's motion to dismiss, holding that the McKinney Act did not apply to the City because it was not a federal agency, and that the McKinney

---

[6] Plaintiffs-Appellants sought to enjoin the City from destroying or disturbing in any other way the improvements on the land at Bergstrom and to force Federal Defendants to report all land and improvements at Bergstrom pursuant to section 11411(a) of Title 42.

Act did not apply to the land because it was subject to reversion. *See* 24 C.F.R. § 581.2(b)(9). Then on March 20, 1996, the court granted a motion to dismiss filed by the federal defendants, concluding that the land was not "unutilized" or "underutilized" prior to closure of the base, and again holding that the disputed land and improvements were exempted from the McKinney Act as property subject to a reversionary interest. Final judgment was entered the same day. Plaintiffs-Appellants filed an interlocutory appeal of the denial of injunctive relief and the City's dismissal, 96-50065, and later an amended appeal from final judgment, 96-50265. Both appeals have been consolidated.[7]

---

[7] In addition to Plaintiffs-Appellants' challenge to the merits, Federal Defendants argue for the first time on appeal that this case should be dismissed for lack of jurisdiction. They claim that because Plaintiffs-Appellants have not shown that they could submit a complying application under the regulations of the McKinney Act, Plaintiffs-Appellants lack the necessary "injury-in-fact" to support Article III standing. Because such an allegation calls into question our jurisdiction under Article III, we would normally resolve it before reaching the merits. There is, however, a clear exception to this general rule.

When the merits of the case are clearly against the party seeking to invoke the court's jurisdiction, the jurisdictional question is especially difficult and far-reaching, and the inadequacies in the record make the case a poor vehicle for deciding the jurisdictional question, we may rule on the merits without reaching the jurisdictional contention. *See Secretary of Navy v. Avrech*, 418 U.S. 676, 677-78 (1974); *Richland Park Homeowners Ass'n, Inc. v. Pierce*, 671 F.2d 935, 941 n.3 (5th Cir. 1982); *Adams v. Vance*, 570 F.2d 950, 954 & n.7 (D.C. Cir. 1978); *Chinese Am. Civic Council v. Attorney Gen. of United States*, 566 F.2d 321, 325 (D.C. Cir. 1977); *see also* CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.15, at 102-04 (1984) ("Cases have been dismissed . . . on the merits, without deciding standing. Despite the occasional grave pronouncements that standing goes to the jurisdiction of the court, this course is entirely appropriate. There is no reason to decide a difficult question of standing if . . . it is easier to reject the claim on the merits.").

Because standing was not raised below, the record on this issue is undeveloped and inadequate. Rather than remand the cause

6

THE PRELIMINARY INJUNCTION

A preliminary injunction may be granted only if the movant can establish four requirements:

> First, the movant must establish a substantial likelihood of success on the merits. Second, there must be a substantial threat of irreparable injury if the injunction is not granted. Third, the threatened injury to the plaintiff must outweigh the threatened injury to the defendant. Fourth, the granting of the preliminary injunction must not disserve the public interest.

*Cherokee Pump & Equipment Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994) (citations omitted). We have frequently cautioned that "[a] preliminary injunction is an extraordinary remedy," and "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The decision to grant or deny a preliminary injunction lies within the discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion." *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996) (citing *Blue Bell Bio-Medical v, Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989)).

The district court found that Plaintiffs-Appellants failed to demonstrate a substantial likelihood that they would succeed on the merits, concluding that neither Federal Defendants nor the City were subject to the regulations of the McKinney Act, which

to the district court to more fully develop the record, in the interest of judicial economy we invoke the exception to the general rule that calls for reaching the standing issue and proceed to the merits of this appeal.

7

specifically exempts "property interest subject to reversion" from coverage. *See* 24 C.F.R. § 581.2(b)(9). In addition, the court found that Plaintiffs-Appellants failed to show that the threatened injury outweighs the damage that an injunction would cause the City, noting that a delay in the City's construction of the airport would produce damages in excess of $73,000,000. We agree with the district court's conclusions. Plaintiffs-Appellants have not presented any evidence of their ability to propose, implement, or finance a homeless program on any part of the land and/or its improvements. On the other hand, Defendants-Appellants have clearly shown that the City and its taxpayers would incur severe damages if a preliminary injunction were granted. Because the threatened injury to Plaintiffs-Appellants does not outweigh the threatened injury to the City, we find that the district court did not abuse its discretion in denying Plaintiffs-Appellants' motion for a preliminary injunction.[8]

## THE DISMISSALS

Plaintiffs-Appellants contend that the City failed to claim the property at Bergstrom in accordance with the 1942 express trust after World War II and therefore waived all right to do so at a later date. In addition, they argue that the City does not have any interest in the land acquired by Federal Defendants after 1942

---

[8] Plaintiffs-Appellants also appeal the district court's denial of their motion for a temporary restraining order. We decline to address this issue in this appeal. "This court has long held that the denial of an application for a temporary restraining order is not appealable." *Matter of Lieb*, 915 F.2d 180, 183 (5th Cir. 1990) (citations omitted).

8

with federal funds, nor does it maintain an interest in any improvements on all the property because Federal Defendants expressly reserved their right to the improvements. As an alternative argument, Plaintiffs-Appellants contend that even if the City does possess a reversionary interest in the land purchased in accordance with the 1942 agreement, its right to enjoyment cannot be granted until Federal Defendants have complied with CERCLA. They argue that the thirty year lease entered into between the City and the Air Force affirms title with the Air Force, only allowing the City access to the land by virtue of the lease agreement. Thus, Plaintiffs-Appellants assert, even if the City prevails regarding the reversionary interest, the land will not revert until the CERCLA lease is terminated, thereby making available all or part of the unused, excess property to the homeless for short-term leases.

The district court granted the Defendants-Appellees' motions to dismiss finding 1) that the City is not a federal agency and is therefore not subject to the provisions of the McKinney Act and 2) that Federal Defendants do not possess or own, for purposes of the McKinney Act, the land and/or improvements at Bergstrom at issue in this case because they are subject to the City's reversionary interest. "We review de novo the granting of a motion to dismiss, accepting as true all well pleaded assertions in the light most favorable to the plaintiff." *Westfall*, 77 F.3d at 870 (citing *American Waste & Pollution Control Co. v, Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991)).

Plaintiffs-Appellants' claims against all Defendants-Appellees are asserted under the McKinney Act. The City does not fall under the requirements of the McKinney Act because it is not a federal agency. *See* 24 C.F.R. § 581.2(a).[9] Accordingly, we find that the district court did not err in granting the City's motion to dismiss.

With regard to Federal Defendants' motion to dismiss, we find that the land and the improvements at Bergstrom fall under an exception of the McKinney Act as "[p]roperty interests subject to reversion" and are therefore, not subject to the provisions of the McKinney Act.[10] 24 C.F.R. § 581.2(b)(9). The reversionary interest exception to the McKinney Act only requires that the property be "subject to reversion"; it does not require that the reversion have already taken place. The express trust entered into in 1942 clearly asserted that title to the land was to remain vested with the City. All written agreements since 1942 have expressly reasserted the City's reversionary interest in the land. Our review of the record, including all written agreements created subsequent to the 1942 express trust agreement, reveals no express

---

[9] Section 581.2(a) states in pertinent part:

This part applies to Federal real property which has been designated by *Federal landholding agencies* as unutilized, underutilized, excess or surplus and is therefore subject to the provisions of title V of the McKinney Act (42 U.S.C. 11411) (emphasis added).

[10] All after-acquired property purchased with federal funds have now been reported to HUD in compliance with the requirements of the McKinney Act and will therefore not be addressed further in this decision.

10

or implied waiver or other relinquishment of the City's reversionary interest. Even the CERCLA lease expressly reserves the City's right to the land. Therefore we find that, pursuant to the language of the McKinney Act, the land at Bergstrom is not subject to the provisions of the Act because it is "subject to reversion" to the City.

Additionally, we find that the improvements made on the land at Bergstrom are also subject to reversion to the City. Although the Air Force continually asserted its interest in ownership of the improvements, we find that the buildings and other structures left on the land when Bergstrom closed in 1993 were permanently attached to the realty and therefore fixtures under Texas law to be carried with the land.

> Three factors are relevant in determining whether personality has become a fixture, that is, a permanent part of the realty to which it is affixed: (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty.

*Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex. 1985) (citations omitted). The status of the improvements as permanent fixtures to the land is not altered by Federal Defendants' abandonment of those structures when Bergstrom closed. Once the improvements, which include large buildings, runways, and other similar structures, were affixed in the manner that they were, they became part of the land. *Id.* at 608. Therefore, because the improvements are fixtures on the land, they are also subject to reversion under the

11

Act.  Accordingly, we find that the district court did not err in granting Federal Defendants' motion to dismiss.

CONCLUSION

For the reasons articulated above, the judgment of the district court is AFFIRMED.