**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 97-40081.

Johnnie Faye SPILLER, Plaintiff-Appellant,

v.

CITY OF TEXAS CITY, POLICE DEPARTMENT;  State of Texas;  Mark
Spurgeon;  City of Texas City, Defendants-Appellees.

Dec. 15, 1997.

Appeal from the United States District Court for the Southern
District of Texas.

Before REYNALDO G. GARZA, KING and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Johnnie Faye Spiller, the plaintiff, brought suit against
defendants Texas City, its police department, and one of its police
officers, Mark Spurgeon, for Spurgeon's alleged violation of her
Fourth Amendment and Texas common law rights.[1]  The district court
dismissed Spiller's Fourth Amendment claims because they "fail[ed]
to state a claim upon which relief [could] be granted," Fed. R.
Civ. Pro.  12(b)(6),  and  accordingly  declined  to  exercise
supplemental jurisdiction over her state law claims.  Finding
Spiller to have alleged a violation of her Fourth Amendment rights,
we reverse in part, affirm in part, and remand the case for further
proceedings.

I.

---

[1]Although Texas was also a named party, the plaintiff has
voluntarily dismissed her claim against the State.

The dismissal of a complaint under Rule 12(b)(6) is reviewed *de novo. House the Homeless, Inc. v. Widnall,* 94 F.3d 176, 180 (5th Cir.1996). Viewing the allegations in the light most favorable to the plaintiff, we will affirm "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.* Consequently, we set forth the facts as they are described in Spiller's complaint.

On July 15, 1994, Spiller, who is black, pulled her car into a Chevron station in Texas City. She stopped at a pump being used by Spurgeon, who is white. As she arrived, Spurgeon was finishing pumping gasoline into his pickup truck. After he finished, Spurgeon did not move his truck to allow Spiller to use the pump. Instead, he began talking with a white man on the other side of the pump. Because Spurgeon was not in uniform, Spiller did not know that he was a police officer.

After waiting a few moments for Spurgeon to move his truck, Spiller rolled down her car window and politely asked him to "please pull up" so she could "get some gas." Spurgeon pretended not to hear this remark, turned his back on Spiller, and continued his conversation. Spiller then opened her car door, placed one foot outside her car, and once again calmly and politely asked Spurgeon to move his truck so she could get some gas. Although he acknowledged this request, Spurgeon continued his conversation and did not move his truck. A few moments later, he acknowledged, but did not honor, a third polite request by Spiller that he move his truck.

Having grown impatient with Spurgeon's behavior, Spiller next opened her car door, again placed one foot on the pavement, and told Spurgeon to "move his damn truck" because "the pumps were not for socializing, they were for people to buy gas and go on about their business."  After hearing these remarks, Spurgeon confronted Spiller and asked her to repeat what she had said.  She did so and Spurgeon then moved his truck.

After moving his truck, Spurgeon returned to confront Spiller as she was seated in her car.  This time he told her to get out of her car.  She refused.  Spurgeon then told her to get out of the car because she was under arrest for disorderly conduct.  He began laughing as he showed her his police badge.

After Spiller was arrested, a police officer searched her car and she was confined in a jail cell that smelled of urine.  She was not prosecuted, however, because the criminal complaint against her was dismissed.

## II.

In support of their motion to dismiss, the defendants argued that Spiller's allegations demonstrate that her Fourth Amendment rights were not violated because there was probable cause for her arrest for disorderly conduct.  In addition, Spurgeon asserted that even if Spiller's allegations stated a claim for the violation of her constitutional rights under Section 1983, he was entitled to qualified immunity because he reasonably believed he had probable cause to arrest her for disorderly conduct.  Further, Texas City and its police department contended that the complaint did not

3

adequately allege that Spurgeon acted in accordance with an official government policy or custom as is required for them to be held liable under Section 1983.

Agreeing with the defendants, the district court dismissed each of Spiller's Section 1983 claims because she failed to state a claim for the violation of her Fourth Amendment rights by Spurgeon. Consequently, the district court did not reach the issues of qualified immunity or municipal liability, and it did not rule on Spiller's request to amend her pleadings regarding the liability of the city and the police department. Further, after dismissing each of Spiller's Section 1983 claims, the district court declined to exercise supplemental jurisdiction over her state law claims. *See* 28 U.S.C. § 1367(c)(3) (allowing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"). Before us on appeal are Spiller's assertions that she adequately pleaded the violation of her Fourth Amendment rights by Spurgeon, that Spurgeon is not entitled to qualified immunity, and that she is entitled to amend her allegations of municipal liability on remand if they are insufficient to withstand a motion to dismiss in their present form.

III.

A. *Spiller's Section 1983 Claim Against Spurgeon*

Under the Fourth Amendment, an arrest must be based on probable cause, which exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of

arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine,* 80 F.3d 129, 132 (5th Cir.1996). Thus, in order for Spiller to have pleaded a constitutional arrest for disorderly conduct, a reasonable person would have to believe that the events at the Chevron station described in her complaint showed that she had intentionally or knowingly used profane, obscene, or threatening language, *see* Tex. Penal Code. Ann. § 42.01(a)(1); *Ross v. Texas,* 802 S.W.2d 308, 314 (Tex.Ct.App.1990) (construing Texas' disorderly conduct statute to punish only "fighting words"—"words likely to cause an average addressee to fight"); *see also Vela v. White,* 703 F.2d 147, 152 (5th Cir.1983) (same); *Texas v. Rivenburgh,* 933 S.W.2d 698, 701 (Tex.Ct.App.1996) (same); *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 785 (Tex.Ct.App.1996) (same), that "by its very utterance tends to incite an immediate breach of the peace," Tex. Penal Code Ann. § 42.01(a)(1).

Although the word "damn" may be profane, the events alleged in Spiller's complaint did not provide Spurgeon with probable cause to believe that her reference to his truck was likely to incite an immediate breach of the peace. To begin with, Spiller's expression of frustration from inside her automobile was not part of a confrontational face-to-face exchange. Under these circumstances, her remark cannot reasonably be interpreted as an invitation to fisticuffs. *See Rivenburgh,* 933 S.W.2d at 701 (affirming a lower court's determination that the exchange of vulgar gestures and mouthed words between the occupants of two different automobiles

5

did not provide a police officer with probable cause to arrest the participants for disorderly conduct). Spiller's reference to Spurgeon's truck, moreover, was unlikely to prompt an aggressive reaction from anyone, let alone from a police officer who might "reasonably be expected to exercise a higher degree of restraint than an average citizen, and thus be less likely to respond belligerently to fighting words." *Lewis v. New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring). Consistent with this expectation, Spurgeon initially responded to Spiller's remark by moving his truck as she had previously requested. Thus, as the sole addressee of Spiller's remark, Spurgeon's own actions belie his assertion that he had probable cause to believe that her comments threatened or caused a breach of the peace. *See Furr's Supermarkets, Inc.,* 921 S.W.2d at 785 (holding that a woman who called a police officer an "idiot" during a parking dispute at a grocery store could not be arrested for disorderly conduct). That Spiller's reference to Spurgeon's "damn truck" was not threatening further undermines his assertion that her speech threatened to disturb "the tranquility enjoyed by the citizens of a community." *Head v. Texas,* 131 Tex.Crim. 96, 96 S.W.2d 981, 982 (Tex.Ct.Crim.App.1936). As it was, the only threat to the tranquility normally enjoyed by those waiting in line to purchase gasoline was Spurgeon's repeated refusal to move his truck. We therefore conclude that Spiller's complaint adequately alleges that Spurgeon violated her Fourth Amendment rights because her contentions, if true, demonstrate that her arrest for

6

disorderly conduct was not supported by probable cause.

In the alternative, Spurgeon suggests that we should nevertheless affirm the district court's dismissal of this Fourth Amendment claim because he is immune from suit for this allegedly unconstitutional arrest. Spiller's pleadings, however, do not provide Spurgeon with a qualified immunity defense.

In order to be immune from Spiller's claim that he violated her Fourth Amendment rights, Spurgeon must show that a reasonable police officer could have believed that her arrest, as described in her complaint, was lawful in light of clearly established law. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). A reasonable officer, however, could not believe that Spiller's remark, without more, provided probable cause to arrest her for disorderly conduct. This is because, as noted above, her remark was not accompanied by any threat to the public tranquility. Further, the clearly established law at the time of Spiller's arrest indicates that her remark did not constitute disorderly conduct under the circumstances allegedly confronting Spurgeon at the Chevron station. For example, in *Vela v. White,* 703 F.2d 147, 150-52 (5th Cir.1983), this Court held that a Texas police officer lacked probable cause to arrest a woman for disorderly conduct after she loudly referred to him as a "fool" because there was "no evidence that [she] uttered any words which would likely have a direct tendency to incite an ordinary person to violence." Similarly, in *Jimmerson v. Texas,* 561 S.W.2d 5, 7 (Tex.Ct.Crim.App.1978) (en banc), the Texas Court of Criminal

7

Appeals held that the mere use of "some profane language," when unaccompanied by evidence that this language was threatening under the circumstances, did not provide probable cause for an "arrest for disorderly conduct."  In light of these decisions,[2] it would be unreasonable for a police officer to conclude that Spiller's remark provided probable cause to arrest her for disorderly conduct.[3]

B. *Spiller's Section 1983 Claims Against Texas City and Its Police Department*

As the above discussion demonstrates, the district court erroneously predicated its dismissal of Spiller's Section 1983 claims against Texas City and its police department on its finding that her complaint failed to state a claim for the violation of her constitutional rights by Spurgeon.  We must therefore consider whether the dismissal of these claims should nonetheless be affirmed because, as these two defendants argue, her complaint fails to link Spurgeon's misconduct to a specific government policy or custom.

---

[2]Spiller also cites *Rivenburgh,* 933 S.W.2d 698, and *Furr's Supermarkets, Inc.,* 921 S.W.2d 778, in response to Spurgeon's assertion that he is entitled to qualified immunity.  Had these cases been decided before the events giving rise to this suit, Spiller's reliance on these decisions would be well founded.

[3]At oral argument, Spurgeon placed great emphasis on this court's decision in *Fields v. City of South Houston,* 922 F.2d 1183 (5th Cir.1991).  In *Fields,* we held that when a state chooses to adopt requirements for an arrest that are more stringent than those found in the Fourth Amendment, the validity of that arrest, when challenged in a Section 1983 case, will nevertheless be evaluated under the applicable Fourth Amendment standards.  Because we have concluded that Spiller has alleged that Spurgeon lacked probable cause under the Fourth Amendment to arrest her for disorderly conduct, the decision in *Fields* is not implicated by Spiller's pleadings.

8

In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). To satisfy the cause in fact requirement, a plaintiff must allege that "the custom or policy served as the moving force behind the [constitutional] violation" at issue, *Meadowbriar Home For Children, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir.1996), or that her injuries resulted from the execution of the official policy or custom, *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir.1992). The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts. *Id.* at 1278.

The allegations of municipal liability contained in Spiller's complaint do not meet these requirements. Her assertion that Texas City is liable because "Spurgeon was acting in compliance with the municipality's customs, practices or procedures" is insufficient because it is conclusory. Equally deficient are her allegations regarding the liability of the Texas City Police Department. To begin with, Spiller fails to allege that the three departmental policies she identifies were causally connected to Spurgeon's misconduct. Instead, she merely asserts that these three policies have "led to" unspecified "unconstitutional arrests and confinements." In addition, the first departmental policy she

9

identifies—"indiscriminately requesting identification of citizens"—is not implicated by the circumstances of her arrest. Further, her allegation that the department also "operate[s] in a manner of total disregard for the rights of African American citizens" is insufficient because it is conclusory. Finally, her contention that the department has a third policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" is both vague and conclusory.

Notwithstanding Spiller's contention that she is entitled to remedy these defects by amending her complaint on remand, an affirmance of the district court's dismissal of her municipal liability claims is required. This is because a plaintiff is not entitled to "an opportunity to satisfy the heightened pleading requirements" of municipal liability cases when she simply "declares the adequacy of [her] complaint" in "response to the motion to dismiss." *Jacquez v. Procunier,* 801 F.2d 789, 792-93 (5th Cir.1986); *see also Babb v. Dorman,* 33 F.3d 472, 479 (5th Cir.1994) (affirming a district court's refusal to grant a plaintiff leave to amend his complaint because he declared the sufficiency of his pleadings and did not offer a sufficient amended complaint in response to the defendant's motion to dismiss). In this case, Spiller responded to the defendants' motion to dismiss by asserting that "her pleadings in their present posture" sufficiently alleged liability on the part of Texas City and its police department.

Spiller may not avoid the implications of this perfunctory

10

response by noting that she also responded to the motion to dismiss by requesting leave to amend her complaint within a reasonable period of time. This request rings hollow in light of her failure to amend her complaint as a matter of right and her failure to furnish the district court with a proposed amendment during the two months following the filing of the motion to dismiss and the order granting that motion. *See Babb,* 33 F.3d at 479. Questioning at oral argument, moreover, revealed that Spiller still cannot adequately allege a basis for municipal liability and that "remanding the case to allow another pleading would do nothing but prolong the inevitable." *Jacquez,* 801 F.2d at 793.

IV.

For the foregoing reasons, we REVERSE the district court's holding that Spiller failed to state a claim for the violation of her Fourth Amendment rights, we AFFIRM the dismissal with prejudice of her Section 1983 claims against Texas City and its police department, and we REMAND her constitutional claims for further proceedings not inconsistent with this opinion.

11