# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 10, 2012

No. 10-31263

Lyle W. Cayce
Clerk

NARRA BATISTE, individually and on behalf of Tylen Pierre, on behalf of
Brennan Batiste, on behalf of Othello J. Pierre Estate; HARRY PIERRE;
JEAN PIERRE; FLORINA PIERRE.

Plaintiffs-Appellees

v.

RONALD J. THERIOT, individually and in his official capacity as Sheriff of
St. Martin Parish; KAYLA MALLORY, individually and in her official
capacity as Deputy with the St. Martin Parish Sheriff's Office; SHAWN
EDWARD JOHNSON, individually and in his official capacity as Deputy with
the St. Martin Parish Sheriff's Office; DONNIE LASHER, individually and in
his official capacity as Deputy with the St. Martin Parish Sheriff's Office;
LEE VERNI, individually and in his official capacity as Deputy with the St.
Martin Parish Sheriff's Office,

Defendants-Appellants

Appeal from the United States District Court
for the Western District of Louisiana
6:09-CV-1109

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-31263

Narra Batiste and other members of her family ("Plaintiffs") brought civil claims against the St. Martin Parish Sheriff and Sheriff's deputies for constitutional violations under 42 U.S.C. § 1983 after the death of their relative following a police chase and tasing. Plaintiffs alleged claims for (1) deadly or excessive force; (2) failure to provide medical care to a detainee; (3) wrongful death; (4) failure to train; and (5) state law claims for wrongful death. The defendants moved for summary judgment based on qualified immunity and lack of causation on the federal claims, and moved to dismiss the state law claims. The district court granted the Sheriff qualified immunity in his individual capacity but denied qualified immunity for the deputies. The appellants appeal the denial of qualified immunity and the decision not to dismiss the failure to train and state law claims. Because we find that the district court erred by not granting the officers' qualified immunity requests and by not dismissing the failure to train and state law claims, we REVERSE.

**FACTS**

Othello Pierre attended a Fourth of July party at his uncle's house. Shortly after arriving at the house, he got into an argument with a cousin and was "cussing" and "raising all kind of hell." His uncle called 9-1-1 for assistance and St. Martin Parish Sheriff's deputies Donnie Lasher and Shawn Johnson responded to the call. They approached Pierre and told him to calm down. Another Deputy Sheriff, Kayla Mallory, was part of the extended family and was also at the party. She approached Lieutenant Lasher and told him that she thought Pierre might have a warrant out for his arrest.

Pierre waited with the officers while one of them ran his name in the database and found that Pierre had an outstanding felony arrest warrant for simple burglary. Lasher told Pierre he was under arrest at which point Pierre broke the grasp of Lasher, said "not this time," and began to flee. Lasher and Johnson pursued him on foot at 6:54 p.m. according to the dispatch center logs.

2

No. 10-31263

Lieutenant Lasher found Pierre hiding behind an old camper shell and ordered him not to move. Pierre again began to flee. Lasher pursued and fired his taser at Pierre at 6:56 p.m., hitting him in the arm and head, and shocking him with a single five second cycle. At 6:58 p.m., Acadian Ambulance was dispatched to the location and, according to ambulance records, arrived at the scene at 7:11 p.m.[1] Pierre was transported to the Lafayette General Medical Center and his condition worsened. Approximately one hour after the incident, Pierre suffered a cardiac event and was pronounced dead at 10:29 p.m.

The official autopsy determined that Pierre died of "multidrug intoxication." His bloodwork showed the presence of methamphetamine, MDMA, Lorazepan, THC-COOH, cocaine, benzoylecognine, and ethanol as well as caffeine, nicotine, and cotinine. The autopsy also showed no signs of physical injuries except for the small cuts made by the taser. The Plaintiffs' expert witness testified that Pierre died of a condition known as "sickle cell trait" which was caused by physical exertion when he fled from the officers. He did not attribute the death directly to the tasing but did find fault with the actions of the EMS officials who arrived on the scene. He stated that Pierre should have been given intravenous fluids, intubated, given oxygen, and immediately transported to the hospital. Instead, approximately thirty minutes elapsed between EMS's arrival and Pierre's transportation from the scene.

Pierre's family ("Batiste") brought § 1983 claims of excessive force, failure to provide medical care, and failure to train, as well as state law claims for wrongful death. The officers argued that the claims should be dismissed because of qualified immunity and lack of causation and moved for summary judgment. The district court granted the Sheriff qualified immunity in his individual

---

[1] Deputy Mallory indicated in a written statement that she estimated that it took 20 minutes for the ambulance to arrive but the validity of the dispatch records are not in dispute even though the Plaintiffs have attempted to use this statement as an indication of a factual dispute.

capacity but denied qualified immunity on all other grounds.  The district court did not enter a written order but simply stated that the motions were denied during a hearing on the matter. The officers appeal the denial of qualified immunity and the decision not to dismiss the failure to train and state law claims. For the reasons stated below, we REVERSE the district court's denial of qualified immunity,  and GRANT judgment as a matter of law on the remaining claims.

## STANDARD OF REVIEW

The denial of qualified immunity, although not a final order, is immediately appealable under the collateral order doctrine. *Turner v. Houma Mun. Fire & Pol. Civil Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000). Qualified immunity protects officials acting under color of state law "from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The clearly established part of the test is a high bar for a plaintiff to meet as he must show that "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates a right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). An officer is entitled to qualified immunity even if he violated a constitutional right, so long as his actions were objectively reasonable.  *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). Unless *all* reasonable officers in the defendants' circumstance would have known that the conduct in question violated the constitution, the defendant is entitled to qualified immunity. *Thompson v. Upshur Cty, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). To overcome a qualified immunity defense, the plaintiff has the burden of showing that the actions were not objectively reasonable and that they violated clearly established law.  *Burns-Toole v. Byrne,* 11 F.3d 1270, 1274 (5th Cir. 1994).

No. 10-31263

In addition, this court reviews the district court's decision on summary judgment *de novo. McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 301 (5th Cir. 1993). Summary judgment is appropriate when the pleadings, viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby Inc.*, 447 U.S. 242, 247 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). To avoid summary judgment on a qualified immunity defense, the plaintiffs must show more than "mere allegations." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

## DISCUSSION

*Excessive Force Claims*:

For the reasons discussed more fully below, we reverse the district court's denial of qualified immunity for the officers. Plaintiffs allege that the officers used excessive force in chasing and tasing Pierre and that the district court properly denied the Defendants' motion for summary judgment on the issue of excessive force. They argue that *Tennessee v. Garner* indicates that it is unlawful to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to an officer. 471 U.S. 1, 11-12 (1985). While we agree that this is an appropriate characterization of *Garner*, we find no support, and Plaintiffs offer none, for the inference that the use of a taser is comparable to discharging a firearm. There are no cases in this circuit that support this proposition and we decline to so rule.

Plaintiffs claim that because the taser was discharged while the officer was running, while the suspect was running, or because the taser hit the suspect in the head, the use of the taser amounts to deadly force. If the taser was used while the discharging officer was running, it was in violation of Sheriff's

5

department training and outside the manufacturers' guidelines for taser use. However, Plaintiffs did not demonstrate that the use of the taser in the manner they described created an unreasonable risk of death. Even if Plaintiffs accurately describe the tasing, they have not shown that the use of a non-lethal weapon in a less than optimal manner necessarily equates to the use of a loaded firearm as was the case in *Garner*. In addition, there is some dispute about whether Pierre was running when the taser was deployed or whether he ducked when the officer told Pierre he was going to tase him. Under the circumstances of this case, the constitutionality of deploying a taser does not fluctuate based on whether Pierre was actually in motion at the time of the discharge or whether he was at a standstill. Either way he was a fleeing suspect. Even if tasing a moving suspect violated department protocol, in this instance, Plaintiffs' assertions that the use of a taser on a fleeing suspect amounted to deadly force are unfounded.

Because we decline to find that the use of the taser on Pierre amounted to deadly force, Plaintiffs' claim is therefore one of excessive use of force. An excessive force claim under the Fourth Amendment must demonstrate (1) injury, (2) which resulted directly and only from a clearly excessive force, and (3) the excessiveness of which was clearly unreasonable. *Fontenot v. Cormier*, 56 F.3d 669, 675 (5th Cir. 1995). Batiste's claim fails on the second prong since neither the medical expert who performed the autopsy, nor Batiste's own expert, testified that Pierre's injuries were the direct result of the tasing. The injury did not result from the tasing regardless of its reasonableness. This eliminates tasing as a basis for an excessive force claim.

Without the tasing, Plaintiffs can only claim that somehow chasing Pierre was excessive force. While it is true that Lasher and Johnson were told by Mallory that she knew where Pierre lived and that they could arrest him at a later time, knowledge of his residence in itself does not make Lasher's chasing

of a suspect with an outstanding felony arrest warrant unreasonable. Even accepting plaintiffs' expert's testimony that Pierre's death was caused by "sickling" brought on by exertion, there is no doubt that chasing a suspect with an outstanding warrant who was resisting arrest is objectively reasonable.

Finally, Plaintiffs' claim that the officers should have recognized that Pierre was in a state of "excited delirium." But such recognition would not make their use of the taser any less reasonable under the test for excessive force. Even if "excited delirium" were the cause of death, the condition as described by Plaintiffs' expert was not caused by the actions of the officers but rather by some combination of the fleeing, the multitude of drugs, and the hereditary traits of the suspect. Because there is no proof the tasing caused Pierre's death, and because even if the tasing did, it is reasonable for officers to chase and taser a fleeing suspect with a felony arrest warrant, we hold the district court erred in denying the officers' qualified immunity defense.

*Denial of Medical Care Claims*:

Plaintiffs allege that the officers at the scene denied Pierre medical attention and in doing so, violated Pierre's constitutional rights under 42 U.S.C. § 1983. The Plaintiffs urge this court to examine the actions of the police officers under both the Eighth Amendment and the Due Process Clause. They characterize Pierre's right to medical attention as the right to protection from harm and the right to medical care while a pretrial detainee. Under the Plaintiffs' offered standard, drawn from *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 636 (5th Cir. 1996), they must establish that the officials acted with "subjective deliberate indifference." The official must be aware of the facts from which an inference of substantial risk of serious harm could be drawn, and actually draw that inference, and the official's response must indicate that he subjectively intended that harm to occur. *Id.* at 649-50. Knowledge may be

No. 10-31263

inferred if the risk was obvious. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Alternatively, the defendants submit that the proper precedent for looking at an arrestee's pre-trial medical care is the Fourteenth Amendment. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996). They suggest that to violate the deliberate indifference prong, the officers had to intend to act with the unnecessary and wanton infliction of pain proscribed by the Constitution. *Smith v. Wade,* 461 U.S. 30, 37-38 (1983). The analysis is similar under either proposed standard and both lead to the same conclusion.

The Plaintiffs' case for deliberate indifference to medical attention fails because they concede that the officers at the scene never thought that there was a serious medical emergency. Their brief states: "[T]he deputies failed to recognize that Othello was in the midst of a medical emergency." This court has held that "[m]ere negligence or failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003). The failure to realize there was a medical emergency, and the concession of such by the Plaintiffs, negates any claim of deliberate indifference unless the risk of serious harm was so patently obvious that it should negate the knowledge requirement.

In Pierre's case, the harm was anything but obvious as the medical experts arriving on the scene found no reason to transport Pierre to a hospital for over thirty minutes. If trained experts did not see the need for more extensive medical attention, Pierre's situation simply cannot rise to the level of a serious medical need for which "treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell,* 463 F.3d 339, 345 n.12 (5th Cir. 2006).

The officers' actions were reasonable given the circumstances and they should have been granted qualified immunity. The records show that they called

No. 10-31263

for an ambulance to be dispatched a mere two minutes after the tasing, as was required by department policy. While the officers removed the taser from the suspect prior to the arrival of the EMTs in contravention of department policy, there is no indication that removing the taser in any way contributed to Pierre's death.

Much of the Plaintiffs medical care claim rests on the testimony of two people. First, Pierre's uncle asserts that the officers waited before calling an ambulance. Second, Mallory reported that there was a delay in providing medical care.[2] Their recollections of the event do not stand up to the undisputed time line from the police and ambulance dispatch records, and are not enough to raise a serious question of fact such that summary judgment should be denied. This analysis is further bolstered by the fact that both Pierre's uncle and Mallory did not arrive on the scene of the tasing until after the ambulance had already been called, thus calling into question their knowledge of whether the ambulance was already on its way. Furthermore, the length of time it took the ambulance to arrive and the treatment provided by the ambulance crew is beyond the control of the defendant officers, and a delay not caused by the officers cannot rise to the level of a constitutional violation on their part. Because the officers' actions were objectively reasonable and because they did not act with deliberate indifference or wantonness, the district court erred in denying the officers' motion on this issue.

*Wrongful Death Claims*:

Plaintiffs also assert that they are entitled to recover for Pierre's wrongful death and that the district court was correct in denying the Defendants' motion for summary judgment on Plaintiffs' wrongful death claims. This court has held

---

[2]    The district court and the Plaintiffs focus on this possible delay, but it appears to be a mischaracterization of the record. Mallory testified "The officer then said to me that's ok we got him. He was tased. The officer then said to me Acadian ambulance is on the way." Doc. No 67-2, Page No. 575. This testimony gives no indication that there was a delay or indifference on the part of the officers.

9

that wrongful death claims are viable under § 1983. *Phillips v. Monroe Cnty.,* 311 F.3d 369, 374 (5th Cir. 2002). A plaintiff must show "both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim as required by the state's wrongful death statute." *Id.* at 374.  Plaintiffs contend Pierre died from "sickling" that could have been avoided had he received immediate medical attention.  The official autopsy states that the cause of death was multiple drug overdose, but even accepting Plaintiffs' assertion that Pierre's death could have been prevented by more immediate medical care, the record indicates that the officers did not commit an unconstitutional act or omission leading to Pierre's death. As discussed above, chasing the suspect or deploying the taser were not unconstitutional acts. The only potential omission on the part of the police would be a delay in providing medical care, but again the record indicates that the police immediately called the ambulance per department protocol.

There are a number of non-binding cases that uphold the proposition that a delay in meeting the medical needs of an arrestee or detainee can negate the need to find that the act or omission on the part of the police was the proximate cause of death, and Plaintiffs urge us to adopt that reasoning here. *See Estate of Owensby v. City of Cincinatti*, 414 F.3d 596, 604 (6th Cir. 2005).  However, this court has never adopted that position and we decline to do so. The cases cited by the Plaintiffs only go so far as to suggest proximate cause need not be proven in situations where the "obvious need" for medical care is apparent or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 604. As described earlier, there is concrete evidence that there was no delay in trying to obtain medical care. Further, the hereditary 'sickling' phenomenon described by Plaintiffs' expert is hardly the kind of obvious medical need that a non-medical expert would understand required attention. According

to the Plaintiffs' expert's testimony, the trait appears through heavy breathing and fatigue, both of which are easily confused with symptoms of someone who had just run over a quarter mile while fleeing the police. Assuming Plaintiffs' version of events, even if this court were to adopt case law from other circuits which negates the proximate cause requirement, there was still no delay or obvious medical need which gives rise to the wrongful death cause of action. The absence of either factor means that the district court erred in not granting the officers' motion.

*Plaintiffs' Claims Against the Sheriff*:

The Plaintiffs make a number of claims against Sheriff Theriot in his official and individual capacities. The court below granted Theriot qualified immunity in his individual capacity, but denied summary judgment to him in his official capacity. On appeal, Plaintiffs assert that the district court properly denied the Defendants' motion for summary judgment against Sheriff Theriot in his official capacity. We disagree, and reverse the denial of summary judgment on the claims against the Theriot in his official capacity.

In order to hold  a supervisor liable under § 1983, a plaintiff must show that (1) the supervisor failed to train or supervise, (2) there is a link between the failure and the violation of the plaintiff's rights, and (3) the failure amounts to deliberate indifference. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Claims against the Sheriff in his official capacity are really claims against the municipality itself.  If the Plaintiffs are arguing that a custom or policy was responsible for the constitutional violation, they must show that such a policy was the "moving force behind the constitutional violation at issue, or that [Pierre's] injuries resulted from the. . .policy." *Spiller v. City of Tex. City Police Dept*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted).  "The description of a policy or custom and its relationship to the underlying constitutional violation,

moreover, cannot be conclusory; it must contain specific facts." *Id.* Finally, a plaintiff may not infer a policy "merely because harm resulted from some interaction with a government entity," and instead must identify the policy or custom that caused the violation. *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993).

The Plaintiffs assert a number of claims against Sheriff Theriot including that he: (1) failed to train his officers in providing medical care especially after tasing, (2) was indifferent in the screening of potential hires, (3) failed to train proper apprehension procedures, and (4) failed to safeguard the constitutional rights of citizens with whom his personnel came into contact.

The failure to train claim fails for a number of reasons. First, Plaintiffs do not show a pattern or policy existed. The Plaintiffs' expert stated that officers should have known that the suspect needed to be placed upright, rather than on his stomach, after being tased. He also testified that tasing should not have been carried out on the run or directed at the head, and that a tasing victim should be under constant medical attention.

Even if that were true, Plaintiffs fail to show that this is a continuing or repeated failure and the Supreme Court has held that a single incident, standing alone, is usually insufficient as a matter of law to establish a failure to train violation. *See Connick v. Thompson,* 131 S. Ct. 1350, 1361-62 (2011) *(*holding that a district attorney's office cannot be held liable for failing to train its prosecutors when the plaintiff proves only a single violation that has allegedly arisen from the inadequate training*); Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985). Nowhere in their brief do the Plaintiffs assert a pattern of incidents or incompetence on the part of the police which would be a prerequisite to proving a failure to train claim.

Second, there is also the continuing problem of causality—namely, there is no evidence that any purported constitutional violation actually caused

12

Pierre's death. Third, the Plaintiffs do not demonstrate or even assert any systemic changes that should have been made in the training program or describe the training failures in anything but conclusory fashion. Fourth, the record indicates that the officers, including Lasher, were trained in the use of tasers, and the policy indicated that they were not supposed to use tasers on moving subjects—similar to Plaintiffs' claims about the proper use of tasers. The fact that this was part of each officer's training undercuts the Plaintiffs' failure to train claim, and although it might bolster their other arguments, such as excessive force, those claims still fail for the reasons described above. Fifth, the officers were trained, and department policy mandated, that an ambulance be called whenever someone was tased. That is exactly what happened here, and per department policy, the officer sought immediate medical attention for a taser subject. The department policy is very much in line with Plaintiffs' expert's recommendations.

The only remaining issue on the failure to train claim is whether the officers were or should have been trained to stand an arrestee upright rather than on his stomach. However, at most this presents the possibility that a one-time action led to an adverse reaction in a subject with a rare hereditary condition, which is not a pattern or practice sufficient to establish a failure to train claim. In sum, the Plaintiffs' arguments regarding the failure to train on the proper use of a taser or proper medical care fall short of presenting a viable claim.

With regard to the screening of potential hires, training in apprehension procedures, and the Plaintiffs' catch-all "failure to safeguard constitutional rights" claim, they present no evidence or even more than a passing reference to these arguments in their briefs and, as such, those arguments are waived, and the Sheriff's motion for summary judgment in his official capacity is granted. *State Law Claims*

No. 10-31263

Plaintiffs also assert state law negligence claims for excessive force in the arrest of Pierre under Louisiana Civil Code article 2315.  They urge this court to uphold the district court's denial of the Defendants' motion for summary judgment as to the Plaintiffs' state law claims.

In the interest of judicial economy, we may exercise pendent appellate jurisdiction to decide these remaining state law claims because they are intertwined with Plaintiffs' federal claims. *See, e.g., Morin v. Caire*, 77 F.3d 116, 122-23 (5th Cir. 1998) (deciding corresponding state law claims after ruling on §1983 claims); *See also Burge v. Parish of St. Tammany,* 187 F.3d 452, 482 (5th Cir. 1999) (stating "whether we can exercise pendent appellate jurisdiction over [Plaintiffs]' ordinary state law tort claims against [the Defendant] depends on whether we have jurisdiction over [Defendant's] appeal of the denial of qualified immunity").  Because  we have jurisdiction to hear the appeal, we can exercise pendent jurisdiction where the facts or elements of the state and federal claims are intertwined. *Cf. Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000) (declining to exercise pendent appellate jurisdiction where "each [claim] has unique elements and relevant facts"). Since we undoubtedly have jurisdiction to hear the appeal of the denial of Defendant's qualified immunity claims, because Plaintiffs' state law claims are neither novel nor complex, and because, the state law claims revolve around an identical set of facts and have nearly identical elements to the federal claims and thus are sufficiently intertwined,  this court has  pendent appellate jurisdiction to review the state law claims.

For Plaintiffs to recover on their state law negligence claims they must show that (1) the Defendants' conduct was the cause in fact of the harm, (2) the Defendants owed a duty of care to Pierre, (3) the duty was breached, and (4) the risk was in the scope of harm afforded by the duty. *See Syrie v. Schilhab,*  693 So.2d 1173, 1177 (La. 1997). Again, the Plaintiffs' claim fails because they

14

cannot show that the defendants' supposed excessive force caused the harm to Pierre since even their own expert states that Pierre died of "sickling" rather from the tasing.

Even assuming the tasing was the cause in fact of death, there is still a serious question as to whether any duty was breached.[3] Plaintiffs assert that the use of force was unreasonable under Louisiana law. To determine the reasonableness of the force used and to determine if a duty was breached, Louisiana law looks at a number of factors: (1) the known character of the arrestee, (2) the risks or dangers faced by the officers, (3) the nature of the offense, (4) the chance of escape if that means of force is not employed, (5) the existence of alternative methods of arrest, (6) the physical strength, size and weaponry of the officers as compared to the arrestee, and (7) the exigencies of the moment. *Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977).

Under Louisiana law, an officer need only choose a reasonable course of action, rather than the best course of action. "[T]he scope of an officer's duty to act reasonably under the circumstances does not extend so far as to require that the officer always choose the 'best' or even 'better' method. . . . Officers . . . are only required to choose a course of action within that range described as 'reasonable.'" *Mathiue v. Imperial Toy Corp.*, 646 So.2d 318, 325-26 (La. 1994).

Even assuming the Plaintiffs could prove cause-in-fact, there is no indication that the use of force was unreasonable under state law. The law requires the officers to take a reasonable course of action rather than the best course of action. Weighing in favor of the defendants are the facts that the suspect had a felony arrest warrant, he was fleeing police after repeatedly being told to stop, and he appeared agitated and was excited enough to have had his own family call the police. In addition, there is a dispute about whether Pierre

---

[3] Neither party disputes that the officers owed some duty to the suspect so we will assume for now that the second prong of the analysis is met.

No. 10-31263

verbally threatened Mallory prior to the arrival of other officers, which could add to the reasonableness of the police actions. Weighing in favor of the Plaintiffs is the fact that Mallory apparently knew Pierre had an arrest warrant prior to the incident and felt no need to arrest him upon arrival at the party. In addition, she knew where he lived, making the existence of alternative methods of arrest very high. Finally, Pierre was unarmed and posed little danger to Lasher at the time of the tasing. Although this is a close issue, the officers chose a reasonable course of action given that Pierre was a felon and repeatedly ignored the officers' orders. As such, even if the Plaintiffs' "sickling" theory was somehow linked to the officers' actions, their actions were still not unreasonable under Louisiana law, and the district court erred in not granting summary judgment to the officers on the Plaintiffs' state law claims.

## CONCLUSION

Accordingly, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion.