Claudia Navarro PINEDA, et al., Plaintiffs,

v.

CITY OF HOUSTON, et al., Defendants.

No. CIV. A. H–98–3877.

United States District Court, S.D. Texas, Houston Division.

July 29, 1999.

Richard Warren Mithoff, Jr., Mithoff and Jacks, Paul Constance Nugent, Foreman Degeurin et al, Julian Fertitta, III, Grimes & Fertitta, Roger Townsend, Ho-

gan Dubose et al, Houston, TX, for Plaintiffs.

Robert Louis Cambrice, City of Houston Legal Dept., Fred A. Keys, Jr., Robert Anthony Armbruster, Robert J. Thomas, Duncan Neblett, III, Houston, TX, for Defendants.

Lloyd A. Simon, Houston, TX, Pro se.

## OPINION AND ORDER

LAKE, District Judge.

Plaintiffs, Claudia Navarro Pineda, Susana Oregon Navarro, Ana Isabel Lores as next friend of Ashley Oregon–Lores, and Blanca Lidia Viera as next friend of Belinda Marili Viera, Rogelio Oregon Navarro, Salvador Lopez, and Nelly Mejia, bring this action pursuant to 42 U.S.C. § 1983 and the Texas Wrongful Death Statute, §§ 71.001 *et seq.* of the Texas Civil Practice and Remedies Code, against defendants, the City of Houston, Houston Police Sergeant D.H. Strouse, and Houston Police Officers D.R. Barrera, P.A. Herrada, D.R. Perkins, L.E. Tillery, and J.R. Willis for the death of· Pedro Oregon Navarro. Plaintiffs seek compensatory damages, costs, and attorney's fees.

Pending before the court are the Motion for Partial Summary Judgment (Docket Entry No. 46) and Motion to Dismiss (Docket Entry No. 47) urged by defendants, Barrera, Herrada, Tillery, and Willis, the Motion to Dismiss (Docket Entry No. 48) and Motion for Summary Judgment, or Alternatively for More Definite Statement (Docket Entry No. 50) urged by defendant Strouse, and the Motion for Summary Judgment (Docket Entry No. 49) urged by defendant Perkins. For the reasons set forth below, the motions to dismiss will be granted in part and denied in part, the motions for summary judgment will be granted in part and denied in part, and plaintiffs will be ordered to file a second amended complaint incorporating the particularized factual allegations asserted in their responses to defendants' dispositive motions. Plaintiffs' second amended complaint shall show as to each live claim, i.e., each claim not disposed of by this Opinion and Order, which defendant allegedly did what to Rogelio Oregon Navarro, Salvador Lopez, Nelly Mejia, and Pedro Oregon Navarro.

## I. *Factual Background*

On the night of July 11, 1998, Herrada and Willis stopped a car for traffic violations. After a routine investigation the driver of the car was ticketed, he and a minor passenger were released, and another passenger, Ryan F. Baxter, was arrested for public intoxication and providing alcohol to a minor. Baxter admitted purchasing and smoking crack cocaine that evening. On the way to the police station Baxter offered to provide information about a crack cocaine dealer named Rogelio in exchange for his release. Herrada and Willis contacted other members of their unit, the Southwest Gang Task Force.

The police officers and their supervisor agreed on a plan of action by which Baxter arranged a meeting to buy crack cocaine from Rogelio at a local restaurant. When Rogelio failed to appear at the restaurant, Baxter traveled with the police to Rogelio's residence at 6711 Atwell, apartment 16. When no one answered the door at Rogelio's residence, the group disassembled. While Herrada and Willis were transporting Baxter to jail, Willis' cellular phone rang. Using the phone's caller identification feature, Baxter identified the call as coming from Rogelio's apartment and asked for another chance to set up the cocaine buy. Officers Herrada and Willis, together with officers D.R. Barrera, D.R. Perkins, L.E. Tillery, and the gang task force supervisor, Sergeant D.H. Strouse, reassembled and went with Baxter to Rogelio's apartment. While Baxter knocked on the door, the officers waited in a column at the foot of the stairs in the following order: Herrada, Willis, Perkins,

Barrera, Tillery, and Strouse.[1]

Once the door opened, the officers entered the apartment without a warrant and without obtaining consent from any of the occupants of the apartment. Inside the apartment were Rogelio Oregon Navarro, Salvador Lopez, Nelly Mejia, and Pedro Oregon Navarro. Three officers fired a total of thirty-three gunshots into Pedro Navarro's bedroom. Pedro Navarro never fired a shot at the officers. One of the officers paused to reload his weapon. Pedro Navarro died from gunshot wounds. The three other occupants of the apartment were arrested. A subsequent search of the apartment failed to find drugs, but did find a handgun close to the body of Pedro Navarro. An autopsy performed on Pedro Navarro's body failed to find drugs in his system.

## II. *Section 1983 Claims and the Doctrine of Qualified Immunity*

### A. Section 1983 Claims

■ 42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. A complaint under § 1983 must allege that the act complained of occurred under color of state law and that the complaining party was deprived of a right guaranteed by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir.1995). Plaintiffs suing public officials under § 1983 must file short and plain statements of their complaint that must be factual and not conclusive. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

### B. The Doctrine of Qualified Immunity

■ Public officials sued in their individual capacities under § 1983 are shielded from suit by the doctrine of qualified immunity unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person should have known. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity was created to balance the interest of compensating persons whose federally protected rights have been violated against the fear that personal liability might inhibit public officials in the discharge of their duties. *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir.1994). "Qualified immunity protects a police officer from liability if a reasonable competent law enforcement officer would not have known that his actions violated clearly established law." *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir.1994), *citing Anderson*, 107 S.Ct. at 3038. "The objective reasonableness of the officer's conduct is measured with reference to the law as it existed at the time of the conduct in question." *Id.* "Therefore, the right the official is alleged to have violated must have been [so] clearly established at the time of the occurrence" that "a reasonable official would understand that what he is doing violates that right." *Id. See also Anderson*, 107 S.Ct. at 3039.

■ Because qualified immunity is an affirmative defense, defendants must both plead and establish entitlement to it. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Harlow*, 102 S.Ct. at 2736–2737. Evaluation of claims to qualified immunity involves a two-step inquiry. *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir.1997), *cert. denied,*

---

1. Houston Police Department Homicide Report, Exhibit 3 attached to Exhibits to Plaintiffs' Response to Individual Defendants' Summary Judgment Motions on the Basis of Qualified Immunity, Docket Entry No. 54 at pp. 1558–1560; Witness Statement of D.H. Strouse, Exhibit 20 attached to Docket Entry No. 54 at p. 1655.

525 U.S. 1054, 119 S.Ct. 618, 142 L.Ed.2d 557 (1998). The first step is to determine whether the plaintiffs have alleged a violation of a clearly established constitutional or statutory right. *Id.* The second step is to determine whether the defendants' conduct was objectively reasonable under clearly established law as it then existed. *Id.*

### III. *Plaintiffs' Claims*

Plaintiffs allege that without a warrant or probable cause all the individual defendants forcibly entered the apartment occupied by Rogelio Oregon Navarro, Salvador Lopez, Pedro Oregon Navarro, and Nelly Mejia and used excessive force to seize the occupants of the apartment in violation of rights guaranteed by the Fourth and Fourteenth Amendments. Specifically, plaintiffs allege that when Rogelio Oregon Navarro opened the door to the apartment from the inside, defendants rushed in without stopping to request consent.[2] Plaintiffs allege that once inside, the individual defendants threatened, assaulted, and falsely imprisoned Rogelio Oregon Navarro, Salvador Lopez, and Nelly Mejia, and shot and killed Pedro Oregon Navarro. All the individual defendants seek dismissal and/or summary judgment based on qualified immunity.

### A. Motions to Dismiss

Motions to dismiss urged pursuant to Fed.R.Civ.P. 12(b)(6) should not be granted unless, based solely on the pleadings, "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Rolf v. City of San Antonio,* 77 F.3d 823, 827 (5th Cir.1996). When ruling on a motion to dismiss, the court accepts the factual allegations of the complaint as true. *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994),

citing, *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir.1993). If the court considers matters outside the pleadings, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56. *See Morin v. Caire,* 77 F.3d 116, 123 (5th Cir.1996).

1. *Motion to Dismiss of Herrada, Willis, Barrera, and Tillery*

Herrada, Willis, Barrera, and Tillery argue that the claims asserted in plaintiffs' second cause of action, as stated in paragraphs 48–49 and 51 of Plaintiffs' First Amended Complaint, should be dismissed for failure to state a claim. These claims are:

48. The actions of Defendants in forcibly entering and searching Plaintiffs' residence at 6711 Atwell, apartment 16, were undertaken without a warrant and without probable cause.

Defendants repeatedly threatened and assaulted each of the Plaintiffs, even though none of them ever posed a threat to the officers. Defendants also falsely imprisoned each of the Plaintiffs, handcuffing them and jailing them overnight.

49. The actions of Defendants deprived Plaintiffs of their right to be free from unlawful searches and seizures in violation of the Fourth Amendment to the United States Constitution and all other applicable law.

. . . . .

51. Mr. Oregon prior to his death, suffered excruciating and substantial conscious physical pain and mental anguish, and Susana Oregon Navarro who has made application for independent administratrix of the estate of Pedro Oregon Navarro, deceased, sues for such damages.[3]

Defendants argue that these claims should be dismissed because plaintiffs fail to al-

---

**2.** *See* Plaintiffs' Response to the Individual Defendants' Motions for Summary Judgment, Docket Entry No. 52 at p. 8.

**3.** Plaintiffs' First Amended Complaint, Docket Entry No. 41 at pp. 10–11.

lege which defendant threatened, assaulted, or imprisoned which plaintiff, and fail to allege with specificity facts demonstrating that the defendants are not entitled to qualified immunity.

In response plaintiffs assert that their First Amended Complaint states claims for warrantless entry, excessive use of force, and false arrest and imprisonment in violation of the Fourth and Fourteenth Amendments. In the alternative, plaintiffs assert that they should be allowed to amend their complaint. Plaintiffs argue that if allowed to amend, they would add the following specific allegations to their complaint:

- Officer Herrada pursued and seized Salvador Lopez inside the apartment. He also helped take Rogelio Oregon Navarro and Nelly Mejia into custody, participating in their false arrest and imprisonment.

- Officer Willis first seized Rogelio Oregon Navarro inside the apartment, striking him in the face without justification. After the shooting ended, Officer Willis took Rogelio and Salvador Lopez into custody, participating in their false arrest and imprisonment.

- Officer Perkins seized Nelly Mejia in the rear bedroom before the shooting, and then took Salvador Lopez into custody after the shooting, participating in their false arrest and imprisonment.

- Officer Barrera took Nelly Mejia into custody following the shooting, participating in her false arrest and imprisonment.

- Sergeant Strouse supervised the entire operation and the plan to obtain entry into the apartment without a warrant. He handcuffed Nelly Mejia following the shooting.

- All the officers conspired in the "plan of action" to manufacture a pretext to enter the apartment without a warrant, and they all conspired to violate the Fourth

and Fourteenth Amendment rights of the plaintiffs.[4]

■ Although a plaintiff's complaint need only be a short and plain statement giving the defendants notice of the claim and the grounds on which it rests, this circuit applies a heightened pleading standard for claims asserted against public officials under § 1983. *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985). *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In *Schultea* the Fifth Circuit sitting *en banc* held:

> When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.

47 F.3d at 1433. *See also Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996) (plaintiff must respond to assertion of qualified immunity by articulating "specific conduct and actions giving rise to a constitutional violation"). While the *Schultea* holding requires plaintiffs to respond in detail to a public official's assertion of qualified immunity, it did not limit the procedural manner in which such responses could be made.

On January 27, 1999, defendant, the City of Houston, filed a motion for more definite statement. The individual defendants did not move for more definite statements. At a hearing held on February 19, 1999, the court granted the City's motion and entered a docket control order directing the plaintiffs to file an amended complaint, and defendants to file motions based on qualified immunity. The court also ordered plaintiffs to file responses to defen-

---

**4.** *See* Plaintiffs' Response to Defendant Officers' Motion to Dismiss, Docket Entry No. 53 at p. 11.

dants' motions within ten days of their filing. On March 10, 1999, plaintiffs filed their First Amended Complaint (Docket Entry No. 41). On April 8, 1999, defendants filed their pending motions to dismiss and/or motions for summary judgment based on qualified immunity. On May 14, 1999, plaintiffs filed a single response to defendants' motions to dismiss (Docket Entry No. 53) and a single response to defendants' motions for summary judgment (Docket Entry No. 52). Plaintiffs' response to defendants' motions to dismiss includes specific allegations against each of the individual defendants, which they argue state claims for warrantless entry and illegal search, false arrest, and the excessive use of force.[5]

### a. Warrantless Entry and Search

██ The Fourth Amendment requires officers entering a person's home to conduct a search to have a warrant based on probable cause. *See United States v. Blount,* 123 F.3d 831, 837 (5th Cir.1997), *cert. denied,* 522 U.S. 1138, 118 S.Ct. 1101, 140 L.Ed.2d 155 (1998). Warrantless searches inside a home are *per se* unreasonable and, therefore, unconstitutional, unless they fall into one of the few specifically established exceptions to the general rule. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent and exigent circumstances are two well-settled exceptions to the Fourth Amendment's warrant requirement. *Id.; Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is, however, "well settled that exigencies deliberately manufactured by the Government violate the Fourth Amendment, especially if the Government's actions are intentionally taken to avoid the warrant requirement." *United States v. Howard,* 106 F.3d 70, 78–79 (5th Cir.1997).

In their First Amended Complaint plaintiffs allege that defendants entered and searched their apartment without a warrant or probable cause. In the statement of facts contained in their response to defendants' motions plaintiffs also allege that based only on Baxter's statement that he had purchased crack cocaine from Rogelio, each of the individual defendants agreed on a plan of action by which Baxter was directed to knock on the door and then to get out of the way, that each of the individual officers waited in a column at the foot of the stairs to the apartment until the door opened and Baxter got out of the way, and that each individual defendant then entered the apartment without consent. These factual allegations are sufficient to state claims for warrantless entry and search of the apartment by each of the individual defendants.

### b. Warrantless Arrest

██ A police officer's warrantless arrest of a person violates the Fourth Amendment unless the arrest is supported by probable cause. *Beck v. State of Ohio,* 379 U.S. 89, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir.1994). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller v. City of Texas City, Police Dept.,* 130 F.3d 162, 165 (5th Cir.1997). Thus, to state a claim for false arrest plaintiffs must allege that the individual defendants arrested Rogelio Oregon Navarro, Salvador Lopez, and/or Nelly Mejia without probable cause.

██ Plaintiffs assert that based only on Baxter's statement that he had purchased crack cocaine from Rogelio, the individual defendants went to Rogelio's apartment, entered without a warrant and without consent, and that once inside the apartment Herrada seized Salvador Lopez and

**5.** *See* Plaintiffs' Response to Defendant Officers' Motion to Dismiss, Docket Entry No. 53 at p. 11.

helped take Rogelio Oregon Navarro and Nelly Mejia into custody, that Willis seized Rogelio Oregon Navarro and took him and Salvador Lopez into custody, and that Barrera took Nelly Mejia into custody. Plaintiffs also allege that the information obtained from Baxter was not reliable and that no drugs were found in the apartment. These facts are sufficient to state claims against Herrada for the false arrest of Salvador Lopez, Nelly Mejia, and Rogelio Oregon Navarro, against Willis for the false arrest of Nelly Mejia and Rogelio Oregon Navarro, and against Barrera for the false arrest of Nelly Mejia. They are not sufficient to state claims against Tillery for false arrest.

### c. Excessive Use of Force

A police officer's use of force violates the Fourth Amendment if the force causes injury, the force is clearly excessive to the need for force, and the excessiveness of the force is objectively unreasonable. *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir.1998). Plaintiffs assert that after entering the apartment, Willis seized Rogelio Oregon Navarro and struck him in the face with his fist for no reason,[6] and that Willis' blow knocked Navarro unconscious.[7] These facts are sufficient to state a claim against Willis for the excessive use of force against Rogelio Oregon Navarro. Plaintiffs do not allege facts sufficient to state claims against Herrada, Barrera, or Tillery for use of excessive force against Rogelio Oregon Navarro, Salvador Lopez, or Nelly Mejia. Consequently, the court finds that the motion to dismiss plaintiffs' second cause of action urged by defendants Herrada, Willis, Barrera, and Tillery (Docket Entry No. 47) should be granted in part

and denied in part, and that plaintiffs should be ordered to amend their complaint to state with particularity as to each alleged claim, which defendant did what to which plaintiff.[8]

### 2. *Strouse's Motion to Dismiss*

Defendant Strouse moves the court to dismiss plaintiffs' action against him for failure to state a claim that survives the scrutiny of qualified immunity. (Docket Entry No. 48) Strouse argues that he is entitled to dismissal on the pleadings because plaintiffs' First Amended Complaint does not apprise him of how his individual conduct violated plaintiffs' rights. Strouse also filed a Motion for Summary Judgment in which he makes the same argument. (Docket Entry No. 50)

In their First Amended Complaint plaintiffs made no particularized claims against Strouse. However, in light of defendants' initial disclosures, plaintiffs assert that if allowed to amend they would add the following allegations against him:

- Sergeant Strouse supervised the entire operation and the plan to obtain entry into the apartment without a warrant. He handcuffed Nelly Mejia following the shooting.

- All the officers conspired in the "plan of action" to manufacture a pretext to enter the apartment without a warrant, and they all conspired to violate the Fourth and Fourteenth Amendment rights of the plaintiffs.[9]

In the statement of facts set forth in their response to defendants' motions for summary judgment, plaintiffs develop the factual allegations against Strouse. Plaintiffs assert that once Herrada and Willis

---

6. *See* Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 52 at p. 8; Plaintiffs' Response to Defendants' Motions to Dismiss, Docket Entry No. 53 at p. 11.

7. *See* Witness Statement of Rogelio Oregon Navarro, Exhibit No. 22 attached to Docket Entry No. 54 at p. 1671.

8. Use of a chart or some other graphic device would be useful to the court and the parties.

9. Plaintiffs' Response to the Defendant Officers' Motion to Dismiss, Docket Entry No. 53 at p. 11.

contacted other members of their unit, including Strouse, that Strouse took control of the drug investigation, agreed to use Baxter as an informant, and allowed Baxter to set up the alleged dealer, Rogelio. Plaintiffs assert that after Rogelio failed to appear at the restaurant and the defendants decided to proceed to Rogelio's apartment, Strouse instructed Baxter to knock on the door, and once the door was open, to prevent it from closing by laying on the floor in front of it. Plaintiffs assert that when the defendants returned to the apartment for the second time, Strouse told Baxter that the plan was the same as before, i.e., that once the door opened, Baxter was to lay down in front of the door to keep it open. Plaintiffs assert that when the door opened, Baxter did as instructed and fell to the floor in the doorway. Plaintiffs assert that Strouse's plan of action violated the Fourth Amendment because it was purposely devised to avoid the warrant requirement and gain access to the apartment by manufacturing exigent circumstances.

The facts asserted against Strouse in Plaintiffs' First Amended Complaint and in the statement of facts included in their response to defendants' motions for dismissal and/or summary judgment are sufficient to state a claim against Strouse for warrantless entry because they allege that Strouse instructed Baxter to fall on the ground in the doorway in order to create the appearance of an exigent circumstance intended to justify the defendants' entry into the apartment. Plaintiffs' factual assertions also state a claim against Strouse for violation of the Fourth Amendment's prohibition against warrantless arrests because they allege that Strouse handcuffed and arrested Nelly Mejia without probable cause. The facts asserted by plaintiffs do not, however, assert any violation by Strouse of the Fourth Amendment's prohibition against the excessive use of force. Accordingly, the court concludes that Strouse's motion to dismiss should be denied as to plaintiffs'

claims for his warrantless entry and search of the apartment and for his warrantless arrest of Nelly Mejia, but granted as to plaintiffs' remaining claims. The court also concludes that plaintiffs should be ordered to amend their complaint to state with particularity the factual allegations against Strouse on the claims that the court has allowed to proceed.

## B. Motions for Summary Judgment

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed.R.Civ.P. 56(c). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis in original), *quoting Celotex,* 106 S.Ct. at 2553. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id., citing Celotex,* 106 S.Ct. at 2553–2554.

Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusive facts and conclusions of law are insufficient to defeat a motion for summary judgment. *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir.1997). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. Facts are considered "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact creates a "genuine issue" if the evidence is such that the trier of fact reasonably could resolve the factual dispute in favor of either party. *Id.* at 2511. Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Id.*

Asserting qualified immunity, Strouse seeks summary judgment on all plaintiffs' claims, Perkins seeks summary judgment on plaintiffs' claims for warrantless entry and search of the apartment and for the excessive use of force against Pedro Oregon Navarro, and Herrada, Willis, Barrera, and Tillery seek summary judgment only on plaintiffs' claims for the excessive use of force and wrongful death of Pedro Oregon Navarro. Evaluation of claims to qualified immunity involves a two-step inquiry. *Colston*, 130 F.3d at 99. The first step is to determine whether the plaintiffs have alleged a violation of a clearly established constitutional or statutory right. *Id.* The second step is to determine whether the defendants' conduct was objectively reasonable under clearly established law as it then existed. *Id.*

1. *Strouse's Motion for Summary Judgment*

a. Warrantless Search

The court has already determined that plaintiffs' allegations state a claim against Strouse for warrantless entry because they allege that he entered the apartment without a warrant or consent, and that he instructed Baxter to fall on the ground in the doorway in order to create the appearance of an exigent circumstance to avoid the warrant requirement.

▮▮▮▮▮▮ Strouse does not dispute that he and the other defendants entered the apartment without a warrant and without the occupants' consent. "[I]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 100 S.Ct. at 1380. Such warrantless searches are prohibited absent probable cause and exigent circumstances. *Id. See also Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984). Exigent circumstances do not justify a warrantless entry if the police manufactured the exigency or created the exigency through unreasonable investigatory tactics. *Blount*, 123 F.3d at 841; *Howard*, 106 F.3d at 78.

Strouse argues that he is entitled to summary judgment on plaintiffs' claim for warrantless search because his entry into the apartment was objectively reasonable due to exigent circumstances, i.e., that when he reached the door he found Baxter lying on the floor, and he heard officers inside yelling. In light of these circumstances, Strouse argues that he reasonably entered the apartment for purposes of officer safety:

> [Strouse] was standing sixth in line and could not see... Suddenly, the officers in front began to move, enter the apartment and yell "Police Officers." He followed, relying upon the actions of the lead officers to conclude that some emergency situation must have developed.[10]

Strouse admits that at the moment he entered the apartment, "[h]e had no idea

---

10. Strouse's Motion for Summary Judgment, Docket Entry No. 50 at p. 13.

what had caused the lead officers to enter."[11] Strouse argues that an officer may rely on the actions of other officers to determine probable cause even if the other officers are wrong.[12]

Plaintiffs argue that Strouse's entry to the apartment was not objectively reasonable because he intentionally devised a plan of action that created the appearance of exigent circumstances to avoid the warrant requirement. In support of this argument plaintiffs submit statements by Baxter, Strouse, and Willis. Baxter stated that Strouse instructed him to knock on the door, then to fall on the floor in the doorway, and to hold the door open.[13] Strouse corroborated Baxter's statement:

> I instructed Baxter to knock on the door, and to attempt to get the source to leave the door open, I then told Baxter after the door opened to get down and stay down and out of the way. I also told Baxter I would handcuff him when I came up.[14]

Willis stated that he knew Baxter had been instructed to get down: "The plan of action was to have Ryan knock on the door and then get out of the way or lay down."[15] The other officers deny knowledge of Strouse's instructions to Baxter.

 The summary judgment evidence raises genuine issues of material fact about whether Strouse's entry to the apartment was objectively reasonable, e.g., whether exigent circumstances existed and, if so,

whether they were manufactured by Strouse. Because the facts are uncontested that Strouse instructed Baxter to get down once the door of the apartment had been opened, absent some evidence of foul play, Strouse could not reasonably have interpreted Baxter's prone position at the entrance to the apartment as an exigent circumstance. Moreover, if, as plaintiffs allege and as evidenced by Willis' contemporaneous statement, Strouse contrived the plan for Baxter to lie on the floor in order to keep the door open and the other defendants knew about the plan, Strouse could not reasonably have relied on their entries to justify his own entry. The court, therefore, concludes that plaintiffs have raised genuine issues of material fact that preclude summary judgment for Strouse on plaintiffs' claim for warrantless entry and search of the apartment. *See Blount,* 123 F.3d at 837 (when exigent circumstances justify a warrantless entry is essentially a factual determination); *Howard,* 106 F.3d at 73 (existence of exigent circumstances is question of fact).

#### b. Warrantless Arrest

 The court has also determined that plaintiffs' allegations state a claim against Strouse for warrantless arrest because they allege that Strouse handcuffed and arrested Nelly Mejia without probable cause. Strouse does not dispute that he arrested Nelly Mejia without a warrant.

11. *Id.* at p. 6. Although Strouse also argues that his entry into the apartment was reasonable because Herrada reasonably decided to enter the apartment upon seeing Rogelio flee from the fallen Baxter, Strouse's admission that he entered without knowing why Herrada had entered establishes that Herrada's reasons for entering are immaterial to Strouse's reasons. Moreover, the fact that Herrada mentioned Rogelio's flight in the administrative statement he gave to HPD investigators in October 1998, but not in the contemporaneous witness statement that he gave immediately after the incident, creates fact issues concerning whether Rogelio fled from Herrada, and if so, whether his flight created an exigent circumstance that justified Herrada's entry.

12. *Id.* at p. 13.

13. *See* Witness Statement of Ryan Baxter, Exhibit 9 attached to Docket Entry No. 54 at p. 1699: "Strouse told me to knock on the door and, as soon as the door was opened, I would hear the officers coming. He told me he did not want the door to close and I was to lay on the floor in front of it."

14. Witness Statement of D.H. Strouse, Exhibit 20 attached to Docket Entry No. 54 at p. 1655.

15. Witness Statement of J.R. Willis, Exhibit 12 attached to Docket Entry No. 54 at p. 1658.

Strouse asserts that he "used reasonable force to assist in the detention of Nelly Mejia immediately after the shooting,"[16] and that "[t]he minimal force he used to restrain Nelly Mejia was reasonably necessary to secure the scene and detain her."[17] Strouse does not offer any reason for detaining Nelly Mejia. Strouse has failed to show that he is qualifiedly immune from plaintiffs' claim for the false arrest of Nelly Mejia because without either a warrant or probable cause the arrest could not have been objectively reasonable. *See Mangieri*, 29 F.3d at 1016 (the right to be free from arrest without probable cause is a clearly established constitutional right).

█ In suits alleging false arrest the determination of qualified immunity turns on whether a reasonable officer could have believed the arrest to be lawful in light of clearly established law and the information the officer possessed. *See Spiller*, 130 F.3d at 166. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller*, 130 F.3d at 165. Because none of the parties present summary judgment evidence demonstrating that Strouse or any of the other defendants possessed information regarding illegal conduct by Nelly Mejia, the court concludes that Strouse is not entitled to summary judgment on plaintiffs' claim for her false arrest.

### 2. *Perkins' Motion for Summary Judgment*

Plaintiffs allege that all the individual defendants, including Perkins, forcibly entered their apartment without a warrant or probable cause, and used excessive force to seize them in violation of rights guaranteed by the Fourth and Fourteenth Amendments. In their response to defendants' dispositive motions plaintiffs also allege that

> Officer Perkins seized Nelly Mejia in the rear bedroom before the shooting, and then took Salvador Lopez into custody after the shooting, participating in their false arrest and imprisonment.[18]

Perkins moves for summary judgment on plaintiffs' claims for warrantless entry and search of the apartment and for excessive use of force against Pedro Oregon Navarro on grounds that he is qualifiedly immune from suit because his conduct was objectively reasonable under the circumstances. Perkins does not challenge plaintiffs' claim for the false arrest of Nelly Mejia and Salvador Lopez. Perkins admits that plaintiffs have alleged violations of clearly established constitutional rights.[19]

#### a. Warrantless Entry and Search

Perkins admits that he entered the apartment without a warrant and without consent, but argues that he did so only after he saw Baxter on the ground and after two other officers had entered before him. Immediately after the incident Perkins stated:

> The male [Baxter] knocked on the door and someone answered the door. After several seconds, Officer Herrada began to move to the top of the stairs. All officers then followed. Upon reaching the top of the stairs, I observed the male lying on the ground in the doorway. Not knowing what had happened, we continued going into the apartment.[20]

16. Strouse's Motion for Summary Judgment, Docket Entry No. 50 at p. 6.

17. *Id.*

18. *See* Plaintiffs' Response to the Defendant Officers' Motion to Dismiss for Failure to State a Claim, Docket Entry No. 53 at p. 11.

19. *See* Perkins' Motion for Summary Judgment, Docket Entry No. 49 at unnumbered

pages two and three: "In this case, there seems little doubt that the asserted injuries(s) involved clearly established constitutional rights of the plaintiffs."

20. Witness Statement of Officer D. Perkins, Exhibit 14 attached to Docket Entry No. 54 at p. 1650.

Perkins argues that his decision to enter the apartment was objectively reasonable because he did not violate clearly established law and because he was following orders of his superiors at all relevant times.

Four defendants, Herrada, Willis, Barrera, and Tillery, stipulate that there exist genuine issues of material fact concerning their warrantless entry into the apartment. The court has found genuine issues of material fact concerning Strouse's entry based on his instructions to Baxter "to get down and stay down." Although Perkins asserts that he had no knowledge of Strouse's instructions to Baxter, Willis' statement that all the officers agreed on the plan of action that Strouse devised is sufficient to raise a genuine issue of material fact whether Perkins knew of Strouse's instructions to Baxter when he entered the apartment and, if so, whether Baxter's prone position at the door to the apartment and/or the other officers' entries constituted exigencies justifying Perkins' entry. Moreover, while Perkins argues that he was only following orders when he entered the apartment, he fails to submit evidence of the orders.

In July of 1998 it was clearly established that police officers could not rely on exigent circumstances to justify a warrantless entry into a home when the alleged exigency was manufactured by the officers' voluntary decision to confront the residents instead of keeping watch while seeking a warrant. *See United States v. Richard,* 994 F.2d 244, 247 (5th Cir.1993). Viewed in the light most favorable to plaintiffs, the summary judgment evidence is sufficient to raise genuine issues of material fact concerning whether Perkins' entry into the apartment was justified by exigent circumstances. *See Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)(qualified immunity does not protect "those who knowingly violate the law"); *Richard,* 994 F.2d at 248–249 (the use of informants to manufacture warrantless searches is not objectively reasonable).

### b. Excessive Use of Force against Pedro Oregon Navarro

Perkins asserts that upon entering the apartment he ran down the hall, observed a closed door, kicked the door (which did not open), heard movement behind him, turned to see a woman (later identified as Nelly Mejia) in a bedroom, and entered the bedroom to secure her. Hearing gunshots, he turned to see Tillery staggering and Barrera firing into the room that had been closed by the door he kicked.[21] As Barrera stepped aside, Perkins moved forward, saw a "figure" moving in the room, fired a number of shots at the "figure," and sought cover in the bathroom where

---

**21.** In a statement given immediately after the incident, Perkins stated:

Officer Herrada and Officer Willis went to the right of the apartment upon entering and I ran to the back of the apartment. Once I got to the back, I observed a closed door to the left. I kicked at the door once and it didn't open. I then heard movement behind me and turned to an open door and observed a woman inside the room. I began to enter the room to secure her. As I entered the room, I heard a gunshot ring out from behind me. I turned and observed Officer Tillery stagger and he advised he had been hit and officer down. I then observed Officer Barrera firing his weapon into the room I had originally attempted to kick open the door.

I believed that Officer Barrera was engaged in a gun battle with a suspect inside the

room. I moved forward as Officer Barrera side stepped. I had my weapon in my hand and observed a figure quickly moving from the right to the left side of the room. I believed that this suspect was still a threat and discharged my weapon at the suspect as he moved. I was not sure how many times I had fired but believe it was at least 3 times. I felt I was in the line of his fire, so I moved to the bathroom where Officer Tillery had crawled to. I then heard more gunfire. I came out of the bathroom and observed the suspect lying on the floor with a revolver lying on the ground to his side. I then yelled out that an officer was down and to get an ambulance en route.

*See* Witness Statement of Officer D. Perkins, Exhibit 14 attached to Docket Entry No. 54 at pp. 1650–1651.

Tillery lay. Once the gunfire ceased, Perkins came out of the bathroom to see a man later identified as Pedro Oregon Navarro lying on the floor with a revolver at his side.

Perkins asserts that at the time he shot at Pedro Oregon Navarro he reasonably believed that Navarro had shot Tillery. Perkins asserts that he discharged his weapon four times and that none of his rounds hit Navarro. Perkins asserts that after he fired at Navarro, Navarro took a new position in the bedroom and Perkins, thinking he was in Navarro's line of fire, pivoted into the bathroom for cover. At that point Perkins heard another barrage of gunshots, pivoted out of the bathroom, and observed Navarro lying on the ground with a gun lying close to his hand. Perkins asserts that his decision to shoot at Navarro was objectively reasonable under the circumstances because he reasonably believed that he was acting in defense of himself and others. Although Perkins argues that Pedro Oregon Navarro had no right to challenge the arrest of his brother by pointing a loaded gun at the uniformed officers, he also testified that the room was dark and that he did not see a gun in Navarro's hands.

■ Plaintiffs argue that fact issues preclude granting summary judgment to any of the defendants on plaintiffs' claims for excessive use of force against Pedro Oregon Navarro. Specifically, plaintiffs argue that "[b]ecause there is a fact issue whether Pedro threatened the officers with a weapon, and whether the officers warned him before opening fire, summary judgment is improper."[22] Plaintiffs do not dispute Perkins' account of his involvement in the shooting, however, and acknowledge that Perkins was not the officer who kicked open Navarro's bedroom door, and was not the first officer to open fire. Plaintiffs' alleged fact issues, therefore, are not relevant to Perkins' argument that

he is entitled to qualified immunity on plaintiffs' claim for the excessive use of force against Pedro Oregon Navarro. Upon hearing gunshots, and turning to see that officer Tillery had been shot and that officer Barrera was shooting into Navarro's room, Perkins could reasonably, albeit perhaps mistakenly, have believed that Tillery had been shot by the person in the room (Navarro), and that Barrera needed help defending himself. Under these circumstances Perkins' spilt-second decision to open fire was not objectively unreasonable.

■ Although at this stage of the proceedings plaintiffs have only conducted limited amounts of discovery, plaintiffs have taken a sworn statement from Perkins and have used excerpts from his testimony to counter the other defendants' pending motions for summary judgment. The court, therefore, concludes that the record on Perkins' involvement has been sufficiently developed to justify a favorable ruling on his motion for summary judgment on plaintiffs' excessive use of force claim. Police officers who reasonably but mistakenly conclude that deadly force is needed to protect themselves and their fellow officers are entitled to qualified immunity for using that force. *See Anderson*, 107 S.Ct. at 3039–3040. Upon seeing officer Tillery shot, Perkins would reasonably have believed that Tillery had been shot by the occupant of the back bedroom, later identified as Pedro Oregon Navarro. Although mistaken, Perkins' belief was reasonable. Perkins, who was in the second bedroom at the time the shooting began, had no way of knowing that Tillery had actually been shot by officer Barrera and not by Navarro. Because there is no summary judgment evidence that Perkins knew Tillery had not been shot by the occupant of the bedroom, the court concludes that Perkins is entitled to summary judgment on plaintiffs' claims for

---

**22.** Plaintiffs' Response to the Individual Defendants' Summary Judgment Motions, Docket Entry No. 52 at p. 28.

excessive use of force against Pedro Oregon Navarro. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1096. This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. *Hunter,* 112 S.Ct. at 537, *quoting Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984).

### 3. *The Motion for Partial Summary Judgment of Herrada, Willis, Barrera, and Tillery*

Plaintiffs allege that all the individual defendants, including Herrada, Willis, Barrera, and Tillery, forcibly entered their apartment without a warrant or probable cause and used excessive force to seize them in violation of rights guaranteed by the Fourth and Fourteenth Amendments. Herrada, Willis, Barrera, and Tillery admit the existence of genuine issues of material fact regarding plaintiffs' claims for illegal entry and search of the apartment and for illegal search and arrest of Rogelio Oregon Navarro, Salvador Lopez, and Nelly Mejia, but argue that they are qualifiedly immune from suit for excessive use of force against "Pedro Oregon Navarro, who was pointing a loaded pistol at the respective defendants, [and who] had no legal or constitutional right to resist an arrest of his brother, even if illegal, with the use of deadly force." [23] Plaintiffs argue that summary judgment is not appropriate because there are issues of fact regarding: whether the officers' use of deadly force was justified, an issue that includes sub-issues concerning whether the officers pursued Navarro into his bedroom and whether Navarro raised a gun at the officers; and whether

the defendants warned Navarro before using deadly force against him.

#### a. Violation of a Constitutional Right

■ The Supreme Court has stated that "all claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Plaintiffs' § 1983 claim for the use of deadly force must thus be analyzed under the Fourth Amendment. *See Stroik v. Ponseti,* 35 F.3d 155, 157 (5th Cir.1994), *cert. denied,* 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995).

■ To prevail on a claim for the use of excessive force under the Fourth Amendment plaintiffs must show that Pedro Oregon Navarro: (1) suffered an injury, which (2) resulted from force that was clearly excessive to the need for force, (3) the excessiveness of which was objectively unreasonable. *Heitschmidt,* 161 F.3d at 839. As in other Fourth Amendment contexts, the reasonableness inquiry in an excessive-use-of-force case is an objective one: The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham,* 109 S.Ct. at 1872. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions

---

**23.** Motion for Partial Summary Judgment Based Upon Qualified Immunity Regarding the Claim for the Wrongful Death of Pedro Oregon Navarro, Docket Entry No. 46 at p. 3.

make an objectively unreasonable use of force constitutional." *Id.* "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 1871, *quoting Garner*, 105 S.Ct. at 1699. "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Graham*, 109 S.Ct. at 1872 (citations omitted). *See also Garner*, 105 S.Ct. at 1699–1700 (the question is whether the totality of the circumstances justifies a particular sort of seizure).

In their First Amended Complaint plaintiffs allege that the defendants rushed into the apartment, kicked in Pedro Oregon Navarro's bedroom door, and fired 33 gunshots into his bedroom, 12 of which hit and killed him. In the statement of facts included in their response to defendants' motions for summary judgment, plaintiffs further develop the factual bases of their claim:

> There were two bedrooms in the rear of the apartment. In one was Nelly Mejia, Rogelio's girlfriend. In the other bedroom was Pedro Oregon Navarro, Rogelio's brother, who had not left his bedroom.
>
> . . . . .
>
> Officer Perkins was the first to reach the bedrooms. Finding Pedro's door locked, he turned into the other room and seized Ms. Mejia. Officer Tillery followed and, without any warning or a request to enter, kicked in Pedro's bedroom door.

The only living witnesses to what happened next are the police officers themselves. Although the room was dark, Officer Tillery claims he saw a man pointing a gun at him. Simultaneously, Officer Barrera came up from behind and shot Officer Tillery in the back. Ballistics reports confirm Officer Barrera fired the first shot, shooting Tillery in the back. Officer Tillery slumped to the ground. Implausibly, Barrera now says he did not know he had shot Tillery.

Allegedly believing the officers were under hostile fire, Barrera fired sixteen times, emptying the entire magazine of his service revolver into the bedroom. When this firing erupted, Officer Perkins turned from where he had detained Ms. Mejia and saw Barrera firing into the room "at a rapid pace." As Barrera paused to reload, Perkins charged to the door and observed Pedro running across the room in a futile effort to evade the gunshots. Perkins admits he never saw a gun in Pedro's hands. Nonetheless, he fired several shots. Officer Herrada also came to the bedroom door and fired several shots into the bedroom.

By this time, Officer Barrera had reloaded his gun and resumed firing at Pedro, who had now fallen to the floor— face down—almost at the feet of the officers. Officer Barrera fired eight more shots at point-blank range. Ms. Mejia observed him from the other bedroom, and she recalled seeing one of the officers "pointing his pistol at a guy who was on the floor of the bedroom right across from where I was at."

In total, the officers fired thirty-three shots in approximately eleven seconds. Officer Barrera fired twenty-four shots; the remainder were fired by Officers Herrada and Perkins.

When the shooting finally ended, Pedro Oregon Navarro lay dead in the

doorway.[24]

### (1) Willis

In the statement of facts accompanying their response to defendants' motion, plaintiffs assert that only three of the four defendants seeking summary judgment on their excessive force claims personally exerted force against Pedro Oregon Navarro: Tillery, who kicked open his bedroom door, and Barrera and Herrada, each of whom fired gunshots into his bedroom. Neither the facts alleged in plaintiffs' First Amended Complaint, nor the facts asserted in plaintiffs' response to defendants' motion for summary judgment suggest that Willis was personally involved in the allegedly excessive use of force against Pedro Oregon Navarro. The court therefore concludes that Willis is entitled to summary judgment on plaintiffs' claims for excessive use of force against Pedro Oregon Navarro because plaintiffs have failed either to allege or to present any evidence that he violated Navarro's constitutional right to be free from excessive force.

### (2) Tillery, Barrera, and Herrada

Plaintiffs assert that after Barrera shot Tillery, he fired sixteen shots into Navarro's bedroom before pausing to reload, and that after reloading, he fired another eight shots. Plaintiffs assert that Herrada came to Barrera's side and fired into Navarro's bedroom. Plaintiffs assert that although Barrera and Herrada both claim to have shot at Navarro in self-defense, their claims are not credible in light of the undisputed fact that Barrera shot Tillery.

In July of 1998 Navarro had a clearly established constitutional right to be free from the use of excessive force by a police officer in the course of an arrest, investigatory stop, or other seizure. *See Graham*, 109 S.Ct. at 1865. Moreover, the law was clearly established that "[a] police officer may not seize an unarmed nondangerous suspect by shooting him dead." *Garner*, 105 S.Ct. at 1701.

### b. Objectively Reasonable Under the Circumstances

Tillery, Barrera, and Herrada argue that they are entitled to qualified immunity regarding the death of Pedro Oregon Navarro because "Pedro Oregon Navarro, who was pointing a loaded pistol at the respective defendants, had no legal or constitutional right to resist an arrest of his brother, even if illegal, with the use of deadly force."[25] If reasonable police officers could differ on the lawfulness of the defendants' actions, the defendants are entitled to qualified immunity. *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir.1994). In the context of the Fourth Amendment, the Fifth Circuit has held that if a suspect's movements give an officer reasonable cause to believe that there is a threat of serious physical harm, the use of deadly force is not a constitutional violation. *See Young v. City of Killeen, Texas*, 775 F.2d 1349, 1353 (5th Cir.1985). An "officer could make a constitutionally reasonable judgment based on a factual misperception." *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir.1998), *cert. granted in part*, 525 U.S. 1098, 119 S.Ct. 863, 142 L.Ed.2d 716, *cert. dismissed*, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999). In other words, if defendants' conduct was objectively reasonable, they may invoke qualified immunity even if their conduct infringed upon Navarro's constitutional rights.

### (1) Tillery

Plaintiffs assert that Tillery kicked open the door to Navarro's bedroom, and that Barrera simultaneously shot Tillery in the back and Tillery

---

24. Plaintiffs' Response to the Individual Defendants' Summary Judgment Motions, Docket Entry No. 52 at pp. 9–10 (citations to record omitted).

25. Motion for Partial Summary Judgment Based Upon Qualified Immunity Regarding the Claim for the Wrongful Death of Pedro Oregon Navarro, Docket Entry No. 46 at p. 3.

slumped to the floor. Plaintiffs neither allege nor present any summary judgment evidence demonstrating that Tillery fired shots at Pedro Oregon Navarro. The court concludes that Tillery is entitled to summary judgment on plaintiffs' claims for excessive use of force against Pedro Oregon Navarro. *See Young*, 775 F.2d at 1353 (merely creating a situation where the risk of a fatal accident is enhanced does not constitute the unreasonable use of excessive force).

#### (2) Barrera

■ Barrera argues that his use of deadly force was objectively reasonable as a matter of law because he was in fear of imminent serious bodily injury or death when he fired at Navarro. Barrera argues that based on his observation of a gun in Navarro's hand pointed at him, a reasonable police officer in his position would have believed that Navarro was attempting to shoot him.

Plaintiffs argue that the court should not rely on Barrera's self-serving testimony that he saw a gun in Navarro's hand. Plaintiffs assert that summary judgment is improper because the facts surrounding the shooting are disputed. Plaintiffs assert that the autopsy reports and bloodstain pattern analysis show that several shots struck Navarro at almost point-blank range while he lay prone on the floor. Plaintiffs argue that the evidence contained in these reports raise genuine issues of material fact concerning the reasonableness of Barrera's use of force and the truth of Barrera's assertion that he acted in self-defense. Plaintiffs assert the physical evidence contained in the autopsy and bloodstain analysis reports are corroborated by Barrera's statement that he kept firing even after he saw Navarro on the floor and by Nelly Mejia's statement that she saw Barrera shooting down at Navarro, and that these statements raise addi-

tional issues of material fact. Plaintiffs assert that disputed evidence concerning whether the officers warned Navarro before shooting at him and whether Navarro knew the intruders were police officers also raise issues of material fact that preclude summary judgment.[26]

While cognizant of the fact that "the 20/20 vision of hindsight" should not be employed in making a reasonableness determination and that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments," *Graham*, 109 S.Ct. at 1872, the court finds, after viewing the evidence in the light most favorable to plaintiffs, that under the totality of the circumstances, genuine issues of material fact exist with respect to whether Barrera could reasonably have believed that Navarro posed a threat of imminent serious bodily injury or death and whether he had a reasonable means to escape such threat if it did exist. Therefore, Barrera is not entitled to summary judgment.

#### (3) Herrada

Like Barrera, Herrada argues that his use of deadly force was objectively reasonable as a matter of law because he was in fear of imminent serious bodily injury or death when he fired at Navarro. Like Barrera, Herrada argues that based on his observation of a gun in Navarro's hand pointed at him, a reasonable police officer in his position would have believed that Navarro was attempting to shoot him.

Plaintiffs argue that the same fact issues that preclude granting summary judgment for Barrera also preclude granting summary judgment for Herrada. However, plaintiffs do not dispute Herrada's account that he only arrived at Navarro's bedroom door after the shooting began, and plaintiffs acknowledge that Herrada was not the officer who kicked open Navarro's bed-

---

26. *See* Plaintiffs' Response to the Individual Defendants' Summary Judgment Motions, Docket Entry No. 52 at pp. 22–28.

room door, and was not the first officer to open fire. Upon hearing gunshots, and running down the hall to see that officer Tillery had been shot and that officer Barrera was shooting into Navarro's room, Herrada could reasonably, albeit perhaps mistakenly, have believed that Tillery had been shot by the person in the room (Navarro) and that Barrera needed help defending himself. Under these circumstances Herrada's spilt-second decision to open fire does not appear to have been objectively unreasonable.

Nevertheless, at this stage of the case plaintiffs have only conducted limited amounts of discovery and have not deposed Herrada. The court concludes that the record on Herrada's involvement has not been sufficiently developed to warrant granting his motion for summary judgment.

## IV. *Texas Wrongful Death Statute*

All defendants seek summary judgment on plaintiffs' state law claims for the wrongful death of Pedro Oregon Navarro. Plaintiffs argue that defendants are not entitled to summary judgment on these state law claims because defendants' conduct was not objectively reasonable.

Texas law provides official immunity to government officials who perform discretionary duties in good faith and within the scope of their authority. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Under Texas law a police officer acts in good faith if a reasonably prudent officer could believe the challenged conduct is consistent with the plaintiffs' rights. *Id.* at 655–656. The Fifth Circuit has explained that "Texas' law of qualified or official immunity is substantially the same as federal immunity law." *Cantu v. Rocha,* 77 F.3d 795, 808 (5th Cir.1996). Texas law "focuses solely on the objective legal reasonableness of the officer's conduct," and whether the officers are entitled to immunity from the state law claims "depends solely on whether [their] actions were objectively reasonable." *Id.*

Plaintiffs argue that because there are fact issues on the question of whether the police officers' actions were objectively reasonable, summary judgment should be denied on the state law claims.

Because plaintiffs failed to allege or present any summary judgment evidence that Willis, Tillery, or Strouse caused Pedro Oregon Navarro's death, the court concludes that these defendants are entitled to summary judgment on plaintiffs' wrongful death claims. Because the court has found that Perkins' use of deadly force was objectively reasonable under the circumstances, the court concludes that Perkins is also entitled to summary judgment on plaintiffs' wrongful death claim. Because the court has found that genuine issues of material fact exist concerning the objective reasonableness of Barrera and Herrada's use of deadly force against Navarro, they are not entitled to summary judgment on plaintiffs' state law claims for wrongful death.

## V. *Conclusion and Order*

The motion for partial summary judgment on plaintiffs' claims for wrongful death and excessive use of force against Pedro Oregon Navarro urged by Barrera, Herrada, Tillery, and Willis (Docket Entry No. 46) is **GRANTED** as to Tillery and Willis and **DENIED** as to Barrera and Herrada.

The motion of Barrera, Herrada, Tillery, and Willis, to dismiss plaintiffs' second cause of action (Docket Entry No. 47) is **DENIED** as to plaintiffs' claims against all four defendants for the wrongful entry and search of Rogelio Navarro's apartment; **DENIED** as to plaintiffs' claims against Herrada for the false arrest of Salvador Lopez, Rogelio Navarro, and Nelly Mejia; **DENIED** as to plaintiffs' claims against Willis for the false arrest of Salvador Lopez and Rogelio Navarro and excessive use of force against Rogelio Navarro; **DENIED** as to plaintiffs' claims against Barrera for the false arrest of Nelly Mejia; **GRANTED** as to plaintiffs' claims against Herrada for excessive use of force against

Salvador Lopez, Rogelio Navarro, and Nelly Mejia, **GRANTED** as to plaintiffs' claims against Willis for the false arrest of Nelly Mejia and excessive use of force against Salvador Lopez and Nelly Mejia; **GRANTED** as to plaintiffs' claims against Barrera for the false arrest of Salvador Lopez and Rogelio Navarro and excessive use of force against Salvador Lopez, Rogelio Navarro, and Nelly Mejia; and **GRANTED** as to plaintiffs' claims against Tillery for false arrest and excessive use of force against Salvador Lopez, Rogelio Navarro, and Nelly Mejia.

The motion for summary judgment urged by Perkins (Docket Entry No. 49) is **DENIED** as to plaintiffs' claims for the warrantless entry and search of Rogelio Oregon Navarro's apartment and the false arrest of Salvador Lopez and Nelly Mejia; **GRANTED** as to plaintiffs' claims for the false arrest of Rogelio Navarro and excessive use of force against Salvador Lopez, Rogelio Navarro, Nelly Mejia, and Pedro Oregon Navarro; and **GRANTED** as to plaintiffs' claims for the wrongful death of Pedro Oregon Navarro.

The motion to dismiss urged by Strouse (Docket Entry No. 48) is **DENIED** as to plaintiffs' claims for the wrongful entry and search of Rogelio Navarro's apartment and the false arrest of Nelly Mejia; **GRANTED** as to plaintiffs' claims for the false arrest of Salvador Lopez and Rogelio Navarro and excessive use of force against Salvador Lopez, Rogelio Navarro, Nelly Mejia, and Pedro Oregon Navarro; and **GRANTED** as to plaintiffs' claim for the wrongful death of Pedro Oregon Navarro.

The motion for summary judgment urged by Strouse (Docket Entry No. 50) is **DENIED**.

Plaintiffs are **ORDERED** to file a second amended complaint by 12:00 Noon on August 10, 1999, incorporating the particularized factual allegations asserted in their responses to defendants' dispositive motions. Plaintiffs' second amended complaint shall show as to each live claim (i.e., each claim not disposed of by this Opinion

and Order), which defendant allegedly did what to Rogelio Oregon Navarro, Salvador Lopez, Nelly Mejia, and Pedro Oregon Navarro. Plaintiffs shall not replead claims disposed of in this Opinion and Order and shall not assert new claims. The purpose of the second amended complaint is to consolidate all remaining claims in one clear, live pleading.

Some of the motions and most of the factual materials used by the court to write this Opinion and Order were filed under seal. The court questions why these materials should remain under seal. All papers favoring or opposing the unsealing of these materials shall be filed by 12:00 Noon on August 6, 1999. Any responsive papers shall be filed by 12:00 Noon on August 11, 1999. Copies of all filings shall be delivered to chambers. A hearing and scheduling conference will be held on Friday, August 13, 1999, at 3:00 p.m. in Court Room 9–B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.